BEACH FULLER v. THOMAS J. CARR AND GEORGE C. CARR.

1. In questions of boundary, if the premises are described by known and definite boundaries, the quantity is of no importance; if not, it may help to ascertain the boundaries.
2. Circumstances extrinsic from the deed are admissible on a question of location, in ascertaining the application of the grant to its subject matter.
3. The true location of premises described in a deed may be ascertained from its references, monuments and whole description.

In trespass. On case certified, &c.

This was an action of trespass *quare clausum fregit,* brought and tried in the Circuit Court of the county of Sussex.

The principal question was as to the true location of the *locus in quo.* Much evidence was given on both sides, and the jury gave a verdict for defendants.

A motion having been made for a new trial, on the ground that the verdict was against the weight of evidence, and therefore erroneous, the case was certified to this court for its advisory opinion, and was argued by

*Daniel Haines,* for the plaintiff.

*T. N. McCarter,* for defendants.

The opinion of the court was delivered by

BEDLE, J. The chief question certified for our opinion is,

VOL. IV.                    K

whether the verdict is against the evidence? The action is for cutting trees on land claimed by the plaintiff. The cutting, by the defendants, is not disputed. The right of recovery depends upon the plaintiff's title to the *locus in quo.* The land in dispute contains about six acres, and is a part of a tract of eighty-nine three-hundredths acres conveyed by Andrew Bell to Robert Carr and Constant Fuller, by deed dated November 23d, 1804. On the 20th of November, 1805, Fuller executed a deed to Carr for a part of the tract, containing sixty-two forty-eight hundredths acres, strict measure; and on the same day Carr executed a like deed to Fuller for another part of the whole tract, containing twenty-six fifty-five hundredths acres, strict measure. The defendants are grandchildren of Robert Carr, by his son David Carr, and are now owners of estates in the sixty-two forty-eight hundredths acres, by a line of title from Robert Carr, by will, descent and sundry deeds. The plaintiff is a son of Constant Fuller, and, by descent and sundry deeds, is now the owner of the twenty-six fifty-five hundredths acres. The plaintiff claims that the six acres in dispute are a part of the twenty-six fifty-five hundredths acres. The defendants claim that the six acre lot is not included in either deed, but lies between each tract, and that the title to it survived to Robert Carr, who died after Constant Fuller—the deed to Fuller and Carr being before the act of February 4th, 1812, respecting joint tenants and tenants in common. If the deed for the twenty-six fifty-five hundredths acres includes the land in dispute, the paper title to it must be in the plaintiff. This then is a question as to the true location of the deed. The description is as follows: "All that tract of land in the township of Wantage aforesaid, now in the occupation of the said party of the second part, and is part of a tract of land (eighty-nine acres and three-hundredths of an acre,) returned to Andrew Bell, and recorded in the surveyor-general's office, at Perth Amboy, in Book S 16, page 487, and was conveyed by the said Andrew Bell to the parties to these presents; beginning at a stake and heap of stones in the

third line of the whole tract, and distant seventeen chains and sixty links from the third corner of the entire tract, thence (1) north fifteen degrees west fifteen chains; thence (2) north thirty-six degrees east thirteen chains and seventy links to the fifth line of the whole tract; thence (3) south seventy-four degrees east eight chains and eighteen links; thence (4) south five degrees east sixteen chains and sixty links; thence (5) south sixty-three degrees west ten chains, to the place of beginning; containing twenty-six acres and fifty-five hundredths of an acre, strict measure." This purports to be a strict survey, but, plotted, it will not close by five chains, and, by forcing the closing line to the beginning, it will contain thirty-eight hundredths acres, instead of twenty-six fifty-five hundredths acres. There is evidently a mistake in it. Both parties agree as to the beginning. If the first two courses are run as given in the deed, it excludes the six acres; but if the survey is reversed from the beginning, and all the courses run according to the deed, excepting the last reversed course, but with that forced to the beginning, it will include the six acres, and the quantity correspond with the deed. How shall this deed be properly located? If the description is sufficient to ascertain the land intended to be conveyed, it will pass by the deed, although it does not agree with all the particulars of the description. 2 *Washburn's Real Property* 629. *Falsa demonstratio non nocet.* It is also a familiar principle that courses and distances are controlled by known monuments called for in the deed. *Opdyke* v. *Stephens*, 4 *Dutcher* 86. This deed states that the twenty-six fifty-five hundredths acres are a part of the tract of eighty-nine three hundredths acres conveyed by Andrew Bell to Fuller and Carr. That is an important description, as the location must be within the whole tract, and the boundaries of that can be referred to, to circumscribe this survey. In addition to that, the second course of the survey of the twenty-six fifty-five hundredths acres calls for the fifth line of the whole tract. This is a monument, and, besides that, the fact that the quantity is stated

as strict measure, is an important part of the description. The quantity is always regarded as descriptive, and will aid in ascertaining the premises. If the premises are indicated by known and definite boundaries, the quantity is of no importance; but if not, it may help ascertain them. 2 *Washburn's Real Property* 630, and cases there cited. The actual place of beginning is not disputed. It is in the third line of the whole tract, distant seventeen chains and sixty links from the third corner of the same. There is no disagreement as to where the survey of the eighty-nine three-hundredths acres is located. The defendants locate their sixty-two forty-eight hundredths acres by it. Trying, then, to locate the deed in question according to the course and distance from the beginning, following around the survey, the result would be as follows: the first course would be within the whole tract; the second course would extend beyond it more than three chains; the third would extend five chains beyond the nearest line; the fourth would run parallel with it, the same distance; the fifth would fall five chains short of the beginning; and, as already stated, by extending that last course to the beginning, the survey would contain thirty eight-hundredths acres, instead of twenty-six fifty-five hundredths acres, strict measure. Besides, ten twenty-three hundredths acres of it would be left outside of the lines of the whole tract. Certainly that cannot be the true location. But if the survey is reversed, remembering that it is a part of the whole tract, the last, fourth, and third courses of the survey would run upon the lines of the whole tract, for the courses of each are the same; the second course, on the reverse running, would start at the fifth line of the whole tract, the monument called for in the deed, and then, by extending the first course to the beginning, making it north thirty-five degrees west from the beginning, instead of north fifteen degrees west, it would give the correct length of chain called for in the deed, (fifteen chains,) and, also, the correct area. That there is a mistake in one of the lines of the deed, is palpable, and it is equally plain, when you take the whole

of the description, references, and monuments, that it must be in the first course. Under that idea, the remainder of the description is sufficient to ascertain what land was intended to be conveyed by the deed. It is further apparent, that the mistake is in the course of the first line, from a reference to the deed for the sixty-two forty-eight hundredths acres from Fuller to Carr. That, and the deed from Carr to Fuller, were executed on the same day. Each tract is described as a part of the whole tract. The area of each is strict measure, and the total of the two is eighty-nine three-hundredths acres, just the quantity of the whole tract. The Carr part lies on the westerly side of the whole survey, his deed agreeing with the outer lines of the same. The Fuller part lies on the easterly side, his deed agreeing with the outer lines there. The two easterly courses and distances of the Carr tract are north thirty-five degrees west fifteen chains, and north thirty-six degrees east thirteen chains seventy links. These agree with the two westerly courses and distances of the Fuller deed, except as to the first course of the latter, which is north fifteen degrees west, instead of north thirty-five degrees west—the distance precisely agrees. With the Fuller survey, located by a reverse running, and the survey closed, the courses would exactly correspond with the Carr deed. In this way, both surveys would harmonize, and absorb the whole tract—otherwise, the twenty-six fifty-five hundredths acres would be located partly outside, and a gap of six seventy-three hundredths acres, the premises in dispute, be left in between the two surveys, across the whole tract, in the shape of a gore and parallelogram combined. It can hardly be supposed, from these deeds, that any land was left between these lots, undivided, subject to survivorship. These considerations, although extrinsic from the deed, are admissible, on the question of location, in ascertaining the application of the grant to its subject matter. *Opdyke* v. *Stephens*, 4 *Dutcher* 14. But apart from that, there is no difficulty in determining where the mistake is, and what is the true location of the deed, from its references, monuments,

and whole description.  The plaintiff has a good paper title in fee to the land in dispute.  On the question of practical location and adverse possession, raised by the defendants, there is no evidence to affect the right of the plaintiff to the full extent of his deed.  The premises are woodland, or in their native state, and were without fence until within the period of limitation, and the judge properly suggested to the jury that this case ought not to be disposed of on the evidence of practical location or adverse possession.  The plaintiff, having a complete title to the premises, in fee, was entitled to a verdict in his favor, and the Circuit Court should be advised that the verdict was clearly against the evidence, and should be set aside.

This point so effectually disposes of the case as to make it unnecessary to express any opinion upon the other questions submitted.

The Circuit Court was advised accordingly.

BEASLEY, C. J., and Justice ELMER, concurred.

CITED *in Andrews* v. *Rue*, 5 *Vr.* 405 ; *Conover* v. *Wardell*, 7 *C. E. Gr.* 502.