**UNITED STATES of America,
Plaintiff,**

v.

**Louis D. De BERADINIS, Jr.,
Defendant.**

**Civ. No. 13664.**

United States District Court,
D. Connecticut.

May 29, 1975.

Gerald C. Miller, Tax Div. United States Dept. of Justice, Washington, D. C., for the United States of America, plaintiff.

Tobias Weiss, Stamford, Conn., for Louis D. De Beradinis, Jr., defendant.

## OPINION, FINDINGS OF FACT and CONCLUSIONS OF LAW.

LEVET, Senior District Judge.*

This is an action involving a claim of "100% penalties" pursuant to §§ 6672, 6671(b), Internal Revenue Code of 1954. The United States has made 100% penalty assessments against Louis D. De Beradinis, Jr. ("De Beradinis") by reason of allegedly unpaid income withholding and Social Security ("FICA") taxes due for the second quarter of 1959 in the sum of $34,055.59 from McFaddin Express, Inc. ("McFaddin").

The complaint filed on January 23, 1970 bases this 100% penalty tax assessment on the ground that De Beradinis was a "responsible officer" of McFaddin and that he had "willfully" failed to pay the above-mentioned taxes.

Defendant filed his answer to the complaint on January 16, 1975, denying the substantive allegations of the government. Defendant asserts that (1) the complaint was not timely filed; (2) the government improperly applied prior payments to other taxes due from McFaddin rather than to the taxes for which defendant has been penalized; and (3) the government failed to en-

* Senior Judge, United States District Court for the Southern District of New York, sitting by designation.

force its tax liens on the McFaddin assets after they were transferred to Adley Trucking Company ("Adley") and while said assets remained sufficient to cover any tax deficiencies of McFaddin.

The statutes involved are §§ 3102(a), 3402(a), 6502(a), 6671(b), 6672 and 7501 of the Internal Revenue Code of 1954 (Title 26, United States Code).

Trial was to the court without a jury.

After hearing the testimony of the parties, examining the exhibits, memoranda and the Proposed Findings of Fact and Conclusions of Law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. The court has jurisdiction over this action. 28 U.S.C. §§ 1340, 1345; 26 U.S.C. § 7402(a).

2. Defendant De Beradinis was, at the time of the institution of this action, a resident of the State of Connecticut. (Complaint, ¶ 4; Answer, ¶ 2.)

3. (a) Defendant De Beradinis organized McFaddin on January 14, 1953 in the State of Connecticut. (Tr. 13, 14.) [1]

(b) This corporation was a common carrier operating in interstate freight covering approximately ten states under a certificate to carry on business issued by the Interstate Commerce Commission ("ICC"). (Tr. 14, 15.) McFaddin filed reports annually and remained in business from the date it was organized through 1958 and into 1959. Defendant, during the years 1953 through 1958, owned practically all of the stock except for two qualifying shares and was president. (Tr. 16.) One Ray Boddy (the bookkeeper) was the treasurer who acted as treasurer and secretary and owned one share of stock. McFaddin's attorney in Washington probably owned one share. Altogether there were three

stockholders and three directors. (Tr. 17, 18).

(c) At the beginning of 1959 McFaddin had terminals in Northburg and New Brunswick, New Jersey; in Manhattan; in Stamford, New Haven, Hartford and Norwich, Connecticut; in Springfield, Boston and Worcester, Massachusetts; and in Providence, Rhode Island. There were eleven in all. The "main" office was in Stamford, Connecticut. The company was authorized to operate in the five northern New Jersey counties, Metropolitan New York, Connecticut and Massachusetts and part of New Hampshire. (Tr. 21, 22, 23.)

(d) At the beginning of 1959 McFaddin employed 270 persons, owned approximately 190 vehicles and rented others; some of the vehicles were subject to chattel mortgages. (Tr. 23, 27.)

(e) In January 1959, according to defendant, McFaddin had more than 5,000 customers. The gross revenues of McFaddin in January 1959 "approached" $3,000,000 per year or about $60,000 a week. (Def. Ex. A; Tr. 30, 31.)

(f) During the years 1953 through 1958 defendant selected the vehicles and all the other new equipment to be purchased by McFaddin. Defendant made the decision of the corporation as to whether a particular item of equipment should be purchased. (Tr. 19, 20.)

4. In 1959 McFaddin experienced financial difficulties. As a result thereof, defendant sought to sell McFaddin to Adley. (Tr. 32.)

5. Defendant De Beradinis, as president of McFaddin, entered into two written contracts with Adley on April 20, 1959. One contract was a management contract which provided that management and control of McFaddin would pass to Adley " . . . from the effective date of any order of the Commission authorizing the same, or to such earlier or later date as shall be ordered

---

1. Numbers in parentheses preceded by "Tr." refer to pages in the stenographer's minutes of the trial. Numbers preceded by "Pl. Ex." refer to plaintiff's exhibits; capital letters preceded by "Def. Ex." refer to defendant's exhibits.

by said Commission, and unless otherwise ordered by said Commission until a final order is made by said Commission disposing of the Third Party's application for authority to acquire through ownership of capital stock control of the First Parties." (Def. Ex. A–2, p. 5.) The other contract was a contract of sale which was conditioned upon approval of the ICC of the temporary management of McFaddin by Adley and upon ICC approval of the contract of sale. (Def. Ex. A–2, p. 1; Tr. 42–48.)

6. Neither agreement made provisions for payment of McFaddin's withholding and FICA taxes for the period April 1, 1959 to May 21, 1959. (Def. Exs. A–1, A–2; Tr. 56, 57.)

7. On or about April 1, 1959 defendant signed his resignations as president and director of McFaddin. On or about the same day defendant signed the stock certificates representing all of his shares in McFaddin, filled in Adley's name and transferred the certificates and resignations to the Fairfield County Trust Company as escrow agent. (Tr. 151–161.)

8. On or about May 7, 1959 Adley filed an application with the ICC to permit a management arrangement with McFaddin. The application also requested approval of the sale of McFaddin to Adley. The sale was never consummated because Adley eventually opposed its own application and the ICC thereupon refused to grant its approval. (Def. Ex. A.; Tr. 28, 29, 49, 180.)

9. On May 21, 1959 the ICC entered an order authorizing Adley " . . . to control McFaddin Express, Inc., through management, but for a period not exceeding 180 days, beginning with the date hereof, . . ." (i. e. May 21, 1959). (Def. Ex. B; Tr. 52, 178, 179.)

10. Subsequent to the granting of the order by the ICC, De Beradinis, as president of McFaddin, did on May 25, 1959 suffer a transfer of the assets, management and control of McFaddin to Adley, this being done without *specifi-*

*cally* providing for the deposit, payment or segregation of funds necessary to liquidate McFaddin's withholding and FICA liability which had accrued since April 1, 1959. (Pl. Ex. 6; Tr. 52, 54.)

11. For the period April 1, 1959 to May 21, 1959, withholding and FICA taxes amounting to $34,055.59 became due the United States from McFaddin. That amount, here claimed by the government, was not withheld and paid over to the government when due. (Pl. Exs. 5, 9.)

12. (a) On or about September 9, 1959 defendant De Beradinis, as president of McFaddin, signed Internal Revenue Form 7004, which was an application for an extension of time to file McFaddin's corporate income tax return for the fiscal year July 1, 1958 to June 30, 1969. (Pl. Ex. 8.)

(b) On December 8, 1959 defendant De Beradinis, as president of McFaddin, signed Internal Revenue Form 1120, which is the corporate income tax return for McFaddin for the fiscal year July 1, 1958 to June 30, 1959. (Pl. Ex. 7.)

(c) Defendant De Beradinis was a responsible person whose duty it was to collect and pay over the withholding and FICA taxes here involved. Prior to April 1, 1959 and through at least December 8, 1959 he was director, president and principal shareholder of the stock of McFaddin. He continued to have the authority to sign checks for McFaddin after April 1, 1959 until May 25, 1959. He was aware that taxes had to be paid for the period April 1, 1959 to May 21, 1959 and that they were not paid by either himself or by Ray Boddy. (Pl. Exs. 6, 7, 8; Tr. 39, 40, 41, 98, 99, 162, 163.)

13. At the time of the transfer of assets from McFaddin to Adley, said assets had sufficient equity, if liquidated, to pay the amount of withholding and FICA taxes here claimed by the government. (Tr. 137, 138.)

14. Subsequent to the transfer of assets from McFaddin to Adley, the assets, income and business of McFaddin rapid-

ly declined. (Tr. 86, 96–98.) McFaddin's gross income for the entire calendar year 1960 was only $60,854 as compared to gross income of about $3,000,000 the previous year. (Def. Ex. A, Def. Ex. H, (for identification); Tr. 30, 31.)

15. (a) On January 13, 1961 a delegate of the Secretary of the Treasury made an assessment against De Beradinis as a responsible officer of McFaddin for unpaid withholding and FICA taxes for the second quarter of 1959 in the amount of $34,055.59. This amount represented the unpaid withholding and McFaddin's employees' share of FICA taxes for the period April 1, 1959 through May 21, 1959. (Pl. Exs. 5, 9.)

(b) On August 10, 1961 De Beradinis submitted a form 656 "Offer in Compromise" to the Internal Revenue Service. This offer was rejected on April 27, 1962. (Pl. Ex. 3; Tr. 5, 8.)

(c) On June 7, 1964, De Beradinis submitted a form 656 "Offer in Comproise" to the Internal Revenue Service. This offer was withdrawn on May 12, 1964. (Pl. Ex. 4; Tr. 5, 8.)

(d) Each of the above-mentioned Offers in Compromise contains the following language with respect to the statute of limitations:

"The undersigned proponent waives the benefit of any statute of limitations applicable to the assessment and/or collection of the liability sought to be compromised, and agrees to the suspension of the running of the statutory period of limitations on assessment and/or collection for the period during which this offer is pending, or the period during which any installment remains unpaid, and for 1 year thereafter."

The effect of the two Offers in Compromise was to extend the six-year statutory period of limitations on collection after assessment by three years and twenty-two days. (26 U.S.C. § 6502(a)(1); Pl. Exs. 3, 4.)

(e) On January 3, 1970 plaintiff commenced the present action by the filing of a complaint.

16. As a result of certain acts of Adley with respect to the McFaddin assets after Adley took control, defendant started a law suit against Adley on behalf of McFaddin and himself individually because he was the chief stockholder. This action resulted in findings by the Superior Court of Connecticut that Adley was responsible for the destruction of McFaddin's business. Adley paid McFaddin $120,000 in settlement of the action. The sum of $72,640, representing the net proceeds of the settlement after attorney's fees and expenses, was paid over to the United States government in settlement of its claim against that fund to satisfy delinquent taxes. The United States played no part in the law suit brought by McFaddin against Adley. (Def. Exs. T, Y; Tr. 105, 106, 107, 131; Stipulation between counsel, Tr. 195, 196.)

17. The collection of $72,640 was applied against the tax liabilities of McFaddin as follows:

| Withholding and Social Security (FICA) | 4th Qtr. of 1957 | Interest | $ 6,359.38 |
|---|---|---|---|
| Withholding and Social Security (FICA) | 1st Qtr. of 1958 | Tax | 508.78 |
| | | Penalty | 19,517.89 |
| | | Interest | $46,253.95 |

(Def. Ex. T, Answer No. 4; Tr. 129.)

18. Plaintiff has not failed to properly apply prior payments.

## DISCUSSION

Section 3101, Internal Revenue Code of 1954, provides that in addition to other taxes there shall be a tax on the wages of employees. This is the Social Security (FICA) Tax. It is further provided in § 3102 that the "tax imposed by section 3101 shall be collected by the employer of the taxpayer [i. e., the employee] by deducting the amount of the tax from the wages as and when paid." Moreover, § 3402 requires the employer paying wages to deduct and withhold from such wages a percentage of the wages as income tax withheld at the source and § 3403 makes the employer liable for the payment of the withheld income tax. With respect to the money so collected, § 7501(a) provides:

"Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose."

This suit revolves around the provisions of § 6672, which provide:

"Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable."

Basically, there are two elements composing the liability imposed under § 6672. The "person" must be a "responsible officer" and the attempt to defeat or evade the tax must be "willful."

This court in Spivak v. United States, 254 F.Supp. 517 (S.D.N.Y.1966), aff'd 370 F.2d 612 (2d Cir. 1967), cert. den. 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 adopted

"* * * the definition of 'willful' contained in Bloom v. United States, 272 F.2d 215 (9th Cir. 1959), cert. denied 363 U.S. 803, 80 S.Ct. 1236, 4 L. Ed.2d 1146 (1960), a case under the predecessor of present Sections 6672 and 6671(b). It was there said:

"'* * * In our view there need not be present an intent to defraud or deprive the United States of the taxes collected or withheld for its account, nor need bad motives be present in order to invoke the sanctions of [the predecessor of Section 6672]. The decision of appellant as the responsible officer of the corporation not to have the corporation pay over to the government the withheld taxes was a voluntary, conscious and intentional act to prefer other creditors of the corporation over the United States. In our view such conduct was willful within the meaning of [the predecessor of Section 6672]. * * *' Bloom v. United States, 272 F.2d at 223.

"This test was approved in this circuit in Horwitz v. United States, 339 F.2d 877 (2nd Cir. 1965), affirming per curiam Horwitz v. United States, 236 F.Supp. 812 (S.D.N.Y.1964). Moreover, this definition of 'willful' comports with the statutory scheme."

Id. at 523.

In Ferguson v. Warren, 13 A.F.T.R.2d 662 (W.D.Wash.1963) the court defined the term "responsible officer" as follows:

"For one to be a person responsible for collection or payment of taxes, it is not necessary that he be a general disbursing officer or employee of a

corporation. A person responsible for taxes is one who has the power to decide what corporation bills should or should not be paid and when. Stated another way, if a corporation did not have enough money to pay all of its creditors, the person who had the power to decide which creditors to pay and which creditors not to pay is a person responsible for payment of the corporation taxes within the meaning of the law we are dealing with in this case."

Id. at 663.

In Dorsey v. United States, 66–2 U.S. T.C. ¶ 9521 (E.D.N.Y.1966) the jury was charged as follows:

"The law defines a responsible officer-employee of the corporation as one so connected with the business as to be in a position to exercise full authority with respect to its financial affairs.

"A responsible officer may not relieve himself of his duty by attempting to delegate his responsibility to a non supervisory employee such as a bookkeeper."

## I.

## BURDEN OF GOING FORWARD AND BURDEN OF PERSUASION

██ Upon trial of an assessment under § 6672 the federal courts have regularly held that upon the introduction into evidence of the government's Certificate of Assessment (Pl. Ex. 5) the government has made its prima facie case and a rebuttable presumption of liability has arisen. If the taxpayer does not offer evidence to overcome the presumption, the judgment must be entered in favor of the government.

In United States v. Lease, 346 F.2d 696 (2d Cir. 1965), the burdens involved were summarized as follows:

"* * * Thus, overall, the Government has the burden of coming forward and persuading the trier that

the taxpayer has or had a tax liability. If not challenged the assessment establishes that liability. A taxpayer's challenge must persuade the trier by a preponderance of the evidence that the assessment is erroneous. The Government then must still persuade the trier that on the basis of all the evidence there was a tax liability— perhaps in a different amount than initially asserted—for which the taxpayer was responsible. * * *"

Id. at 701. See Reinecke v. Spalding, 280 U.S. 227, 50 S.Ct. 96, 74 L.Ed. 385 (1932); United States v. Galtrof, 245 F.Supp. 158 (S.D.N.Y.1965); Psaty v. United States, 442 F.2d 1154, 1159 (3rd Cir. 1971); United States v. Rexach, 482 F.2d 10 (1st Cir. 1973), cert. denied 414 U.S. 1039, 94 S.Ct. 540, 38 L.Ed. 2d 330 (1973). This presumption of correctness attaches to each element. Datlof v. United States, 252 F.Supp. 11, (E.D.Pa.1966), aff'd 370 F.2d 655 (3rd Cir. 1966), cert. denied 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624.

## II.

## DEFENDANT FAILED TO MEET HIS DUAL BURDEN

### A. RESPONSIBLE OFFICER

██ Plaintiff has assessed against defendant a "responsible officer" penalty. (Pl. Exs. 5, 9.) As is set forth above, the burden was upon the taxpayer-defendant to present evidence showing that the assessment was improper. Such evidence must be credible in order to sustain that burden. The basic evidence introduced by defendant was his own self-serving and uncorroborated testimony. The primary theory of his defense is that he was not in control of McFaddin during the second quarter; however, a letter, written on December 19, 1961 (Pl. Ex. 6) indicates otherwise. It should be noted that it was only for the period April 1, 1959 through May 21, 1959 that an assessment was made

against defendant. The obligation of a responsible officer arises at the time the taxes are withheld from wages, *not* at some subsequent time when payment is due or the return is to be filed. 26 U. S.C. § 7501; Long v. Bacon, 239 F.Supp. 911 (S.D.Iowa 1965). Even if Adley were also in control of McFaddin beginning on April 1, 1959, defendant has not established that Adley was the *sole* responsible officer.

In addition to the letter (Pl. Ex. 6), other contradictions appear in the taxpayer's testimony. He testified that he was not the president of McFaddin and that he signed no corporate papers in his capacity as a corporate officer after April 1, 1959 (Tr. 48, 59); yet plaintiff produced an income tax return and a request for an extension of time to file that return signed in December and September 1959, respectively. (Pl. Exs. 7, 8.) De Beradinis testified that he just did as he was told when he signed the return without grasping the significance of his act (Tr. 186–188); yet the execution of that document was under the pains and penalties of perjury.

Defendant testified that he had authority to sign checks for McFaddin although he had a great deal of difficulty recalling *what* he had signed. (Tr. 40.) He also testified that one Ray Boddy had served as treasurer of McFaddin, yet Boddy was never produced. No witnesses were introduced to buttress his claim that Adley had taken control as of April 1, 1959.

Defendant's Exhibits A, A–1, A–2 and B establish the fact that Adley was at least entitled to control after May 21, 1959; however, that period is not an issue in this case. Defendant's Exhibits C, D, E, F and G do not deal with matters at issue in this case and therefore add nothing which can be of assistance in reaching a decision.

## B. WILLFULNESS

■ Clearly, defendant's acts were willful. In dealing with the issue of willfulness, the courts have repeatedly held that if a corporation had sufficient assets with which to pay the employment taxes due, and the taxpayer as a responsible officer made a deliberate choice to pay other creditors, instead of paying the government, the conduct involved was "willful" within the meaning of the Internal Revenue Code. See Dillard v. Patterson, 326 F.2d 302 (5th Cir. 1963); Bloom v. United States, 272 F.2d 215 (9th Cir. 1959).

Numerous cases have dealt with the liability of a responsible officer who pays other creditors when the withholding and social security taxes remain unpaid or where funds are used to pay current operating expenses prior to liquidating the accrued tax liability. See United States v. Graham, 66–2 U.S.T.C. ¶ 9703, 18 A.F.T.R.2d 6009 (E.D.N.Y.1966); Burden v. United States, 72–2 U.S.T.C. ¶ 9597, 30 A.F.T.R.2d 72–5292 (N.D. Okla.1972), aff'd 486 F.2d 302 (9th Cir. 1973).

■ The withholding tax trust fund must not be subjected to common business risks. Frequent consultation by the responsible officer with the Internal Revenue Service is no defense to the liability. Carroll v. United States, 67–2 U.S.T.C. ¶ 9656, 20 A.F.T.R.2d 5560 (S. D.N.Y.1967).

■ Under the facts of this case the court is presented with a situation where defendant's corporation incurred liability for unpaid withholding and FICA taxes between April 1 and May 21, 1959. During that time, De Beradinis permitted and, in fact, joined in the voluntary transfer of control and possession of all of the assets of McFaddin without providing for the payment of the tax liability which had accrued during the first fifty one days of that quarter. By this act, De Beradinis sought to contract away not his future tax liabilities but McFaddin's accrued liability.

## III.

### DEFENDANT HAS FAILED TO PRESENT ANY SUBSTANTIAL AND LEGALLY COGNIZABLE DEFENSE

Defendant has raised certain defenses, but they are without substance.

### A. TIMELINESS OF FILING COMPLAINT

 Defendant has denied plaintiff's allegation that the complaint, filed on January 23, 1970, was timely filed. (Complaint, Par. 9; Answer, Par. 3.) The assessment was made on January 13, 1961. Section 6502(a)(1), Internal Revenue Code of 1954, provides:

"Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—

"(1) within 6 years after the assessment of the tax, * * *."

The statutory period would have expired on January 13, 1967. However, § 6502(a)(2) provides that the tax may be collected only if the levy is made or the proceeding begun

"prior to the expiration of any period for collection agreed upon in writing by the Secretary or his delegate and the taxpayer before the expiration of such 6-year period (or, if there is a release of levy under Section 6343 after such 6-year period, then before such release)."

In the present case extensions were made. Evidence of such extensions was submitted. (Finding of fact 13; Pl. Exs. 3, 4.) The first offer was submitted on August 10, 1961 and was rejected on April 27, 1962, thus extending the statutory period for eight months and seventeen days, plus one year. The second offer was submitted on January 7, 1964 and withdrawn on May 12, 1964, extending the period for four months

and five days plus one year. The combined extension is therefore two years, twelve months and twenty-two days, or three years and twenty-two days, causing the period to expire on February 4, 1970, several weeks subsequent to the filing of the complaint.

### B. PLAINTIFF'S FAILURE TO PROPERLY APPLY PRIOR PAYMENTS

 The defendant claims that the United States has failed to apply funds received by it in such a way as to relieve him of the responsible officer assessment against him. This charge is not denied, in fact for the Commission of Internal Revenue to have done otherwise would have been to shirk his responsibility to insure that the maximum amount of assessed tax be collected. Monday v. United States, 421 F.2d 1210 (7th Cir.), cert. denied 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970).

Defendant attempts to buttress his defense with Revenue Rulings 73–304 and 73–305, I.R.B. 1973–29, 7/16/73. The scope of these rulings is limited to voluntary payments by a taxpayer to the Internal Revenue Service prior to the commencement of litigation. All payments received by the United States were involuntary in that they resulted from Internal Revenue levies or participation in litigation. The $72,640 received in the settlement of the Adley litigation was received from McFaddin and not from defendant and was properly applied to that corporation's outstanding and singular liability. Burch v. United States, 71–1 U.S.T.C. ¶ 9366, 27 A.F.T. R.2d 71–1291 (D.Col.1971); Carroll v. United States, supra; Datlof v. United States, 370 F.2d 655 (3rd Cir. 1966); Hewitt v. United States, 377 F.2d 921 (5th Cir. 1967).

### C. THE DUTY OF THE UNITED STATES TO ACT AS A COLLECTION AGENT FOR McFADDIN AND DEFENDANT

 Defendant's third and final defense is the alleged failure of the United

States to enforce its tax liens on McFaddin's assets.

Defendant contends that when a third party takes over control and has assets with tax liens on them and misappropriates the assets and the IRS is informed of that, the IRS has some obligation to do something about it and that it should enforce its liens, if that is the only course available, against the assets in the hands of the third party. (Tr. 105, 106.)

Defendant claimed that he informed the IRS of his sale of McFaddin to Adley during a meeting with IRS agents in the Stamford IRS office some time in mid-May 1959. At the same time, defendant claims, he informed the IRS that Adley was going to pay McFaddin's delinquent taxes. (Tr. 122, 123, 125, 126.)

Defendant further claimed that he made a request to IRS in August 1959 with respect to Adley's handling of McFaddin's assets. (Tr. 133.) Defendant testified that he asked the IRS to make the books and records available to him and he could show where the assets were and how much in dollars was involved. These books had been turned over to Adley. The point, according to defendant, was that "if they were able to get the books * * * we could show them where the assets were." (Tr. 135, 136.) The trial court stated: "This is getting back to the theory that if the Company had some assets, why the Government needn't worry. In other words, he was trying—Counselor, if I may say this, he was trying to treat IRS like some businessman would treat a creditor, not under the required payment regulation." (Tr. 136.) Defendant further stated that he told the IRS to seize the assets which McFaddin had had and the equipment which had been turned over to Adley so that the assets could be converted into cash to pay the obligation of McFaddin. (Tr. 136, 137.) Defendant relies on Tozier v. United States, 65–2 U.S.T.C. ¶ 9621 (W.D.Wash.1965). The facts in Tozier are immediately distinguishable from the present action. The court, at page 96,645, Finding XXV, found that there was an agreement with the revenue agent to attempt to limit the effect of the responsible officer penalty. That agreement provided, in substance, that in order to continue the operation of the corporation as long as possible the IRS would forego levy and siezure of the corporate assets if the responsible officers would refrain from liquidation proceedings. The corporation in Tozier was the largest single employer in a Washington county and its closing would have resulted in increased unemployment and loss of revenue to the United States. The responsible officers had threatened to liquidate in order to protect themselves from the 100 per cent penalty for nonpayment of payroll taxes. If levy, seizure and sale eventually became necessary, then pursuant to said agreement, the IRS was to apply the proceeds thereof first to the payment of those employment taxes which might result in imposition of the 100 per cent penalty. This agreement was subsequently breached by the IRS when it applied the proceeds of the sale of assets to *employer* taxes and when it released some of the seized assets. In Tozier the court held that because of the agreement and breach thereof, the withholding and FICA tax deficiencies resulted not from the "willful" conduct of the responsible officers but from the conduct of the IRS. In the present action, no such agreement has been either proved or pleaded by defendant and his reliance on Tozier is misplaced. This defense that the IRS has a duty to act as a collection agent for defendant is without merit.

The courts have universally held that the United States is not bound by laches. United States v. Firestone Tire & Rubber, 374 F.Supp. 431 (N.D. Ohio 1974); United States v. Pensalt Chemicals, 262 F.Supp. 101 (E.D.Pa. 1967; Woods v. Wayne, 177 F.2d 559 (4th Cir. 1949); United States v. Sandlass, 34 F.Supp. 81 (D.N.J.1940). The doctrine of laches is especially inappro-

**954**

priate in the area of tax collection since "[t]axes are the lifeblood of [the] government and their prompt and certain availability an imperious need." Bull v. United States, 295 U.S. 247, 259, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935).

It is, therefore, evident from the above discussion that defendant failed to show by credible evidence that he was not a responsible officer of McFaddin during the April 1 through May 21, 1959 period for which the tax imposed by § 6672 has been assessed against him. Moreover, defendant has been unable to sustain any of his claimed defenses with meaningful and recognized legal authority and, in fact, the recognized precedents are contrary to his position.

### CONCLUSIONS OF LAW

1. The court has jurisdiction over this action. 28 U.S.C. §§ 1340, 1345; 26 U.S.C. § 7402(a).

2. Pursuant to 26 U.S.C. §§ 6201 (a) and 6672, an assessment in the amount of $34,055.59 was made against De Beradinis as a responsible officer of McFaddin on January 13, 1961.

3. This action was commenced within the period of limitations permitted by statute. 26 U.S.C. § 6502(a).

4. Defendant willfully failed to collect and pay over a total of $34,055.59 in withholding and FICA taxes due for the period April 1, 1959 to May 21, 1959, when it was his duty to so collect and pay over such taxes. 26 U.S.C. §§ 6672, 6671(b).

5. Plaintiff was under no obligation imposed by statute, administrative regulation or agreement to make any particular application of payments received due to its collection activities with respect to the liabilities of McFaddin.

6. Plaintiff was under no obligation imposed by statute, administrative regulation or agreement to take any particular collection activity with respect to the liabilities of McFaddin.

7. Plaintiff, United States of America, is entitled to judgment against defendant, Louis D. De Beradinis, Jr., for taxes assessed in the sum of $34,055.59, plus interest according to law and costs.