**UNITED STATES of America Upon the Relation and for the Use of the TENNESSEE VALLEY AUTHORITY, Plaintiff,**

v.

**N. Reese BAGWELL, Jr., and Susan Perrine Bagwell, his wife, Defendants.**

**Civ. A. No. 3–87–0614.**

United States District Court, M.D. Tennessee, Nashville Division.

Feb. 2, 1988.

Edward S. Christenbury, Gen. Counsel, James E. Fox, Deputy Gen. Counsel, Charles W. Van Beke, Asst. Gen. Counsel, Edwin W. Small, Sr. Litigation Atty., Scott Robins, Tennessee Valley Authority, Knoxville, Tenn., for plaintiff.

Van L. Riggins, Jr., Bagwell, Bagwell, Parker, Riggins & Kennedy, Clarksville, Tenn., for defendants.

**JUDGMENT**

HIGGINS, District Judge.

This is an action by the United States of America for the use and benefit of the Tennessee Valley Authority (TVA) for a mandatory injunction requiring defendants, N. Reese Bagwell and Susan Perrine Bagwell, to remove a wooden barn owned by defendants from a permanent electric pow-

er transmission line easement and right-of-way owned by plaintiff.

The action is before the Court on plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, and it appearing to the Court, based on consideration of the entire record, that plaintiff's motion should be granted, the Court makes the following determinations:

### Findings of Fact

1. TVA is a wholly owned corporate agency and instrumentality of the United States of America created by the Tennessee Valley Authority Act of 1933, 16 U.S.C. §§ 831–831dd (1982 & Supp. IV 1986). Section 4 of the TVA Act, 16 U.S.C. § 831c(h), authorizes TVA to acquire in the name of the United States of America such real property and interests in real property as it deems necessary or convenient in the transaction of its business, and all such properties and interests in properties are entrusted to TVA as the agent of the United States of America to accomplish the purposes of said Act. Those purposes include the generation and distribution of electric power. 16 U.S.C. § 831d(*l*).

2. In May 1945, pursuant to its statutory authority, TVA purchased in the name of the United States of America a permanent easement and right-of-way for an electric power transmission line across the land that is involved in this action (TVA tract No. KN–261) (complaint ¶ 5; answer at 1). The easement grant, from defendants' predecessors in title, was recorded on May 23, 1945, in Deed Book 95, page 67, in the Office of the Register of Montgomery County, Tennessee, and provides in part that plaintiff has "the perpetual right to enter and to erect, maintain, repair, rebuild, operate and patrol one or more electric power transmission lines … *the right to clear said right of way and keep the same clear of* brush, timber, *inflammable structures*, and fire hazards" (*id.*).[1] In 1945, TVA constructed and has continuously maintained a portion of a high-voltage electric power transmission line, designated by

TVA as the Clarksville–West Nashville 161–kV transmission line, across the easement and right-of-way described in said grant (complaint ¶ 6; answer at 1).

3. By virtue of a warranty deed recorded June 16, 1982, in Deed Book 325, page 486, in the Office of the Register of Montgomery County, Tennessee, defendants purchased property at 1721 Merrywood Drive, Clarksville, Tennessee, referred to by the deed as 1731 Merrywood Drive, subject to TVA's permanent transmission line easement and right-of-way (complaint ¶ 8; answer at 2). A wooden barn, approximately 18 feet wide by 23 feet long, and owned by defendants, is located entirely within plaintiff's transmission line easement and right-of-way (complaint ¶ 9; answer at 2).

4. Defendants, in their answer, deny that the wooden barn is inflammable, and assert laches, estoppel, and waiver as affirmative defenses based on plaintiff's alleged failure to request removal or relocation of the barn over a 24–year period.

### Conclusions of Law

1. This Court has jurisdiction of this action under 28 U.S.C. § 1345 (1982). Venue is proper under 28 U.S.C. § 1391(b) (1982).

2. Defendants' wooden barn is an inflammable structure and therefore in violation of the plaintiff's express easement rights.

Inflammable is synonymous with "flammable" and "combustible" (*Roget's International Thesaurus* 329.28 (4th ed. 1977); *Webster's Collegiate Thesaurus* 441 (1976)), and is generally defined as "[c]apable of being inflamed or set on fire; susceptible of combustion; easily set on fire." *The Compact Edition of the Oxford English Dictionary* 1430 (1971). *See also Webster's Third New International Dictionary* 1159 (1961) ("capable of being easily set on fire and burning violently: FLAMMABLE"); *The Random House Dictionary of the English Language* 730 (1966)

---

1. Emphasis added unless otherwise noted.

("capable of being set on fire; combustible; flammable").

Thus, wood, wood products, and wooden structures are specifically recognized as flammable or combustible throughout the Code of Federal Regulations. For example, the regulations which govern the location of HUD–assisted housing projects state:

> Combustible structures, such as wooden houses, may be ignited by the thermal radiation being emitted [from a fire] [24 C.F.R. pt. 51, subpt. C, app. II, § I(a)(1) (1987)].

See also 30 C.F.R. § 77.1109(b) (1985) (Mine Safety and Health Administration regulations imposing certain fire safety requirements "for each 2,500 square feet of floor space in a wooden or other flammable structure"); 29 C.F.R. § 1910.155(c)(8) (1986) (Occupational Safety and Health Administration regulations defining " 'Class A fire' means a fire involving ordinary combustible materials such as paper, wood, cloth, and some rubber and plastic materials"); 29 C.F.R. § 1926.803(l)(8) (1987) ("Wood, paper, and similar combustible material shall not be used...."); 40 C.F.R. § 761.30(a)(1)(viii) (1986) ("As of December 1, 1985, combustible materials, including, but not limited to paints, solvents, plastics, paper, and sawn wood must not be stored...."); 30 C.F.R. § 56.4000 (1986) ("Wood, paper, rubber, and plastics are examples of combustible materials."); 24 C.F.R. § 3280.2(a)(4) (1987) (" 'Combustible material' means materials made of, or surfaced with, wood, compressed paper, plant fibers, or other material that will ignite and burn."); 43 C.F.R. § 9212.0–5(d) (1986) (classifying "lumber" as a "flammable material").

Judicial decisions also recognize that wood, wood products, and wooden structures are inflammable or combustible. As the court stated in Centraal Stikstof Verkoopkantoor v. Pensacola Port Auth., 205 F.Supp. 724, 728 (N.D.Fla.1962), aff'd, 316 F.2d 189 (5th Cir.1963):

> Virtually all buildings constructed of wood are highly combustible, i.e., they will burn if ignited.

See also Continental Casualty Co. v. Howard, 775 F.2d 876, 880 (7th Cir.1985), cert. denied, 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 186 (1986) (listing "wood" as an example of "highly combustible materials"); Lumbermen's Underwriting Alliance v. Can–Car, Inc., 645 F.2d 17, 18 (9th Cir.1980) (referring to "wood chips and other combustible materials"); Joseph T. Ryerson & Son, Inc. v. H.A. Crane & Brother, Inc., 417 F.2d 1263, 1264 (3d Cir. 1969) (referring to "combustible materials, including wooden boards, wooden pallets"); Proler Steel Corp. v. Luria Bros. & Co., 417 F.2d 272, 274 (9th Cir.1969) (referring to "paper, wood, grease, oil, paint, rubber, and other combustibles"); Gearhardt v. American Reinforced Paper Co., 244 F.2d 920, 923 (7th Cir.1957) (referring to "lumber, tar and other combustible materials").

■ 3. Defendants assert laches, estoppel, and waiver as affirmative defenses on allegations that plaintiff knew of the location of the barn since 1963 and took no action to have it removed or relocated for many years (answer at 2). Even if this assertion of inaction is considered true for purposes of plaintiff's motion (plaintiff in fact disputes defendants' assertion of inaction), nevertheless, defendants' affirmative defenses are inapplicable as a matter of law. It is well established that laches, estoppel, and waiver based on inaction do not apply against the Government in situations where it is seeking to enforce its property rights. As the Supreme Court stated in Utah Power & Light Co. v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791 (1917), in affirming injunctions issued by lower Federal courts against defendants' continued occupancy and use of Government lands:

> [I]t is said that the agents in the forestry service and other officers and employees of the Government, with knowledge of what the defendants were doing, not only did not object thereto but impliedly acquiesced therein until after the works were completed and put in operation. This ground also must fail. As a general rule laches or neglect of duty on the part of officers of the Government is no defense to a suit by it to enforce a

*public right or protect a public interest....* A suit by the United States to enforce and maintain its policy respecting lands which it holds in trust for all the people stands upon a different plane in this and some other respects from the ordinary private suit to regain the title to real property or to remove a cloud from it [243 U.S. at 409, 37 S.Ct. at 391]. Similarly, in *United States v. California,* 332 U.S. 19, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947), the Supreme Court held:

Nor can we agree with California that the Federal Government's paramount rights have been lost by reason of the conduct of its agents. The state sets up such a defense, arguing that by this conduct the Government is barred from enforcing its rights by reason of principles similar to laches, estoppel or adverse possession.... *[E]ven assuming that Government agencies have been negligent in failing to recognize or assert the claims of the Government at an earlier date, the great interests of the Government in this [property] are not to be forfeited as a result.* The Government, which holds its interests here as elsewhere in trust for all the people, is not to be deprived of those interests by the ordinary court rules designed particularly for private disputes over individually owned pieces of property; and *officers who have no authority at all to dispose of Government property cannot by their conduct cause the Government to lose its valuable rights by their acquiescence, laches, or failure to act* [332 U.S. at 39–40, 67 S.Ct. at 1668–1669].[2]

*Accord California ex rel. State Lands Comm'n v. United States* 457 U.S. 273, 276 n. 4, 102 S.Ct. 2432, 2434 n. 4, 73 L.Ed.2d 1 (1982) ("California does not contend that ... the United States is estopped from asserting its claim to ownership of the disputed land.... Such an argument is foreclosed by *United States v. California....*").

4. The above principle is applicable to Government easements, just as it is to other interests in property. For example, in *United States v. Sandlass,* 34 F.Supp. 81 (D.N.J.1940), the Government obtained a right-of-way in 1893 and shortly thereafter an encroaching structure was built on it. *Forty-seven* years later, when the Government sought to remove the encroachment, the court held "[t]he Government ... cannot be penalized for its inactivity" (34 F.Supp. at 85), and issued an injunction requiring removal of the encroachment.

Likewise, in *United States ex rel. TVA v. Caylor,* 159 F.Supp. 410, 413 (E.D.Tenn. 1958), the court ordered the removal of a house which had been on a TVA transmission line easement for 12 years, stating:

Inactivity or neglect on the part of the officers of the Government is no defense against the claim by the Government to protect its property.

5. The proper method of protecting the rights of the easement owner in situations such as this is by mandatory injunction ordering removal of the structure which encroaches the easement. In *United States ex rel. TVA v. Hughes,* 408 F.2d 619 (6th Cir.1969), the Sixth Circuit reversed a district court ruling which would have allowed a landowner to continue to maintain two immobile house trailers on a TVA flowage easement provided the landowner took certain precautionary measures. In rejecting the lesser remedy ordered by the district court, the Sixth Circuit stated:

The narrow question presented here is whether, under the terms of TVA's flowage easement, the owner of the fee can be enjoined from erecting house trailers within the easement area. We hold that he can be enjoined and that the judgment of the district court *must* be reversed. We are of the opinion that the presence of these immobilized house trailers in the area of the flowage easement violates, in particular, the express provision of the

2. "The Board of Directors of the Tennessee Valley Authority have been given the *sole* authority by Congress to dispose of property owned by the United States and operated by TVA." *United States ex rel. TVA v. Caylor,* 159 F.Supp. 410, 413 (E.D.Tenn.1958). Hence it is only by action of TVA's Board of Directors, in accordance with TVA's real property disposal procedures, that the easement rights at issue here could even possibly have been relinquished.

easement which authorizes the destruction or removal of 'any obstruction * * * or any other thing which would in any way interfere with navigation or flood control'. . . .

\* \* \* \* \* \*

*It is no excuse to say that this particular obstruction is minor in nature* [408 F.2d at 620–21].

*Accord United States ex rel. TVA v. Caylor,* 159 F.Supp. 410 (E.D.Tenn.1958) (ordering removal of a house from a TVA transmission line easement).

Based on the foregoing, it is hereby ADJUDGED that:

1. Defendants, N. Reese Bagwell, Jr., and Susan Perrine Bagwell, are hereby ordered to permanently remove the wooden barn which is the subject of this action from plaintiff's easement and right-of-way within 90 days of the entry of this judgment.

2. Costs shall be taxed in favor of plaintiff. Approved for entry: