82  215
f101  216

CARLETON MILLS COMPANY *vs.* JOSHUA E. SILVER, and another.

Piscataquis.   Opinion December 30, 1889.

*Deed.   Water-rights.   Measure of power.\*   Limit of use.*

The plaintiffs' deed of a specific part of the premises immediately following the description of the boundaries, contained the following: "Together with the Williams dam and all the water privilege of the Carleton Mill Stream 'so called' for all the purposes of propelling a factory and its machinery and appurtenances to be built on said privilege, said factory building to be ninety-eight feet in length and forty-eight feet in width with all necessary appurtenances and machinery for working the same up to its full capacity."

*Held:* That this language is to be construed as a measure of the quantity of water to which the plaintiffs are entitled, and not as a limit of the use of the water to carry only such machinery as might be in the main building.

When from the terms of the grant it is doubtful whether the kind of mill or particular machinery mentioned indicates the quantity of water and measures the extent of power intended to be conveyed, or is referred to as a limit of the use to the particular kind of a mill or machinery, the former construction will be favored as more favorable to the grantee, more for the general interest of the public, and as being more probably the intention of the parties.

And if some of the machinery required in such a factory is located in an annex instead of being in the main building, and no more power is required to propel it than if it was situated in the main building, it would be within the terms of the plaintiffs' deed.

*Held, also,* that the following requested instruction by the defendants was rightfully denied:—"the plaintiffs' deed does not give them a preference to operate their factory more than a reasonable time; and ten hours per day of week days through the year is a reasonable time." The deed contains no such restriction.

ON EXCEPTIONS.

This was an action on the case, for diverting water from the plaintiffs. The declaration is as follows:—

"In a plea of the case, for that the plaintiffs ever since the 8th day of June, A. D. 1881, have been seized in their demesne as of fee and have been in actual possession of a large woolen mill and all the necessary machinery to run said mill to its full capacity,

\*See *Warner* v. *Cushman, ante,* p. 168.

situate on the easterly side of Carleton stream, so called, in Sangerville village aforesaid, together with the Williams dam, being a dam across said stream at said factory, and all the water privilege of the Carleton stream aforesaid for the purpose of propelling said factory and said machinery to its full capacity, with the first right to, and control of, all the water in said Carleton stream at said dam and privilege at all times and seasons of the year for the purpose of propelling said factory and machinery to its full capacity, which said mill and machinery cannot be operated successfully unless said plaintiffs can have all said water and power to which they are entitled; and the said defendants are the owners and occupy mills situate on the westerly side of said Carleton Stream on said dam, and as such are entitled to use the water from said dam for a saw-mill when such does not interfere with or prejudice, restrict or diminish the power required by said plaintiffs to run their mill at its full capacity at all times and seasons of the year; and yet the said defendants, though well knowing the rights of said plaintiffs, have used the water from said dam to such an extent at divers times within the past ten months that said plaintiffs could only run a portion of their mill and machinery, and on the 27th day of July, and divers other days, in consequence of the wrongful use of said water by said defendants, said plaintiffs were compelled to shut down their said mill, and said mill remained shut down for the remainder of each day when shut down as aforesaid, and thereby threw out of employment forty persons employed by said plaintiffs in said mill, and to the great loss, damage and injury of said plaintiffs; and said defendants have drawn and still draw said water from said dam to such an extent that said mill cannot be operated successfully on account of the diminished power occasioned by the wrongful use of said water from said dam by said defendants.

Said plaintiffs aver that within ten months last past said defendants have each day used said water from said dam to such extent to interfere with, diminish and restrict the power necessary to run said mill and machinery to its full capacity, thereby causing the plaintiffs to run only a portion of their mill, and at times to shut it down entirely; and that said plaintiffs have requested repeat-

edly said defendants to desist from using said water as aforesaid, but they decline and refuse to do so, and are still using said water in said wrongful manner. All of which is to the damage of said plaintiffs," etc.

Plea, general issue and brief statement.

The defendants contended that the plaintiffs under their deed, described and interpreted in the opinion, had no right to put and operate the water-wheel and machinery outside of their main building in an annex, nor do the same as to the elevator in a tower adjoining the main building.

There was a verdict for the plaintiffs; and the defendants excepted to the rulings and instructions of the court, as appears in the opinion.

*Crosby and Crosby*, *A. G. Lebroke* with them, for defendants.

Counsel cited: *Drummond* v. *Hinkly*, 30 Maine, 433; *Barrett* v. *Parsons*, 10 Cush. 367. Plaintiffs guilty of contributory negligence in allowing penstock and flume to leak. *Kennard* v. *Burton*, 25 Maine, 39; *Perkins* v. *R. R. Co.*, 29 Id. 307, and cases cited; *Moore* v. *Abbot*, 32 Id. 46; *Bigelow* v. *Reed*, 51 Id. 325; *O'Brien* v. *McGlinchy*, 68 Id. 552. Plaintiffs entitled to preference only to a reasonable extent, i. e., ten hours per day not including Sunday. R. S., c. 82, § 43, first enacted in 1848, c. 83, § 1; R. S. of U. S. § 3738; *Bachelder* v. *Bickford*, 62 Maine, 526.

*Henry Hudson*, for plaintiffs.

Counsel cited: (Construction of deed.) *Deshon* v. *Porter*, 38 Maine, 289; *Sumner* v. *Williams*, 8 Mass. 162; *Covel* v. *Hart*, 56 Maine, 518; *Biglow* v. *Battle*, 15 Mass. 312; *Wakely* v. *Davidson*, 26 N. Y. 387; Gould on Waters, § 318; and cases cited under note 4; also § 320. *Pratt* v. *Lamson*, 2 Allen, 275; *Coburn* v. *Middlesex Company*, 142 Mass. 264; *Davis* v. *Muncey*, 38 Maine, 90; *Kaler* v. *Beaman*, 49 Id. 207; *Wyman* v. *Farrar*, 35 Id. 64; *Covel* v. *Hart*, 56 Id. 518; *Blake* v. *Madigan*, 65 Id. 522; *Cowell* v. *Thayer*, 5 Met. 253; *Cromwell* v. *Selden*, 3 N. Y. 253; *Olmsted* v. *Loomis*, 9 N. Y. 424. (Appurtenances.) *Salisbury* v. *Andrews*, 19 Pick. 250; *Leonard* v. *White*, 7 Mass. 8; *Maddox* v.

*Goddard*, 15 Maine, 218 ; *Cunningham* v. *Webb*, 69 Id. 92 ; *Baker*
v. *Bessey*, 73 Id. 472; *Ammidown* v. *Ball*, 8 Allen, 293; *Parsons*
v. *Johnson*, 68 N. Y. 62; Wash. on Real Prop., vol. 3, p. 394.

FOSTER, J.   On June 8, 1881, Owen B. Williams was the
owner of the premises, land and water privilege about which this
contention has arisen, situated upon Carleton stream in the vil-
lage of Sangerville.   Upon that day he conveyed by metes and
bounds a specific part of the premises to the plaintiffs, and in the
conveyance, immediately following the description of the boun-
daries, is this language :   "Together with the Williams dam and
all the water privilege of the Carleton Mill Stream, so called, for
all the purposes of propelling a factory and its machinery and
appurtenances to be built on said privilege, said factory building
to be ninety-eight feet in length and forty-eight feet in width,
with all necessary appurtenances and machinery for working the
same up to its full capacity."

Subsequently the plaintiffs built a woolen factory on the privi-
lege conveyed by this deed, two stories high besides a basement,
the main building being the same dimensions as that named in
the deed.   On the easterly side of the main building, but con-
nected with it, a tower eighteen feet by twelve feet was erected,
in which were the stair-ways to the main building, and an elevator
operated by power from the factory wheel.

On the northerly end of the main building and connected with
the same outside the ninety-eight feet in length, was erected an
annex in which were placed the factory wheel, two pickers, a
duster and a force pump, which were run by the factory wheel;
also dye kettles, rinsing tubs, boiler to heat the factory, and
chimney.   The only wheel which run the factory was built under
this annex.

The case shows that while the main building contained suffi-
cient room for the wheel, pickers and duster, yet no more power
was required to propel them in this annex than if located in the
main building.

The points in controversy, so far as they are raised by the bill
of exceptions, pertain to the legal construction of this deed, and
may be determined by the answer to this single question :—

Whether the language in the deed shall be construed to measure the quantity of water to which the plaintiffs are entitled, or to limit the use of water to carry only such machinery as may be in the main building.

The plaintiffs' contention is for the former,—that the grant is of water sufficient or necessary to propel a particular factory, reference to the mill being made only to indicate and measure the quantity of power intended to be conveyed.

The defendants, upon the contrary, contend that the deed is to be so construed as to limit the power for the special purpose of propelling only such machinery as may be contained in the main building.

It is undoubtedly competent for the owner of the whole of a mill privilege to convey any part of the power he pleases and limit its use to any particular purpose which he may see fit to express in the grant and the other party is willing to accept. Where such purposes are plain from the terms of the conveyance, courts will so construe the contract as to carry into effect the expressed intention of the parties. Oftentimes, however, where such rights are derived solely from grant, particularly where they are a part only of a larger water power, it is a question of some difficulty in construing the grant to determine whether the power granted was intended to be applied to a specific use only, or whether a reference to the purposes named in the grant was made for the sole purpose of defining and measuring the quantity of power granted. If the parties from the terms of the grant have left it doubtful whether the kind of mill or particular machinery mentioned indicates the quantity of water and measures the extent of the power intended to be conveyed, or is referred to as a limit of the use to the particular kind of mill, or specified machinery, the former construction will be favored as being more favorable to the grantee, more for the general interest of the public, and as being more probably the intention of the parties. This is the general doctrine adopted by the courts and adhered to in grants of this nature whenever the description of the rights conveyed is in such terms as to leave it in doubt which of these two kinds or species of grants was intended. *Deshon* v. *Porter*,

38 Maine, 289, 293; *Pratt* v. *Lamson*, 2 Allen, 275; *Tourtellot* v. *Phelps*, 4 Gray, 370, 374; *Ashly* v. *Pease*, 18 Pick. 268, 275; *Covel* v. *Hart*, 56 Maine, 518.

In this case the court instructed the jury that the "plaintiffs' rights are not confined to such machinery alone as they might put into the main building, for the true construction of that deed does not restrict the water to such machinery as is in there, but the language of the deed is simply used to express the measure of the water to which they are entitled."

This instruction we think presented the law correctly to the jury. In construing the plaintiffs' deed from Williams the intention of the parties must first be sought from the language of the deed, taken in connection with the situation of their business, the subject matter to which it relates, and the object to be obtained. *Sumner* v. *Williams*, 8 Mass. 162; *Deshon* v. *Porter*, *supra*.

When we consider, therefore, the objects and purposes for which the power was granted, we think it clear that the language of the deed does not restrict the grantees to the use of the water for the specific purpose of propelling such machinery only as might be in the main building, but that by the terms of the deed, so far as they relate to the machinery to be used in a factory of the dimensions named, the intention was to describe the quantity of water the use of which is thereby conveyed. Hence, if some of the machinery required in a factory like this is located in an annex instead of being in the main building, and no more power is required to propel it than if it were situated in the main building, it would certainly be within the terms of the plaintiffs' deed.

The power intended to be conveyed, as expressed in the deed, is "for all the purposes of propelling a factory and its machinery and appurtenances" essential to the successful operation of a building of the size mentioned in the terms of the grant, "with all the necessary appurtenances and machinery for working the same up to its full capacity."

The annex and tower situated upon the plaintiffs' land and thus connected with the factory building proper, considering the nature of the grant and the purposes to which the power was to be applied, may properly be considered as embraced within

the terms of the deed. The case discloses the fact that there was sufficient room in the main building for such machinery as was placed within this annex. If, therefore, the plaintiffs considered it for their interest or convenience to place some portion of the machinery necessary to the operation of their factory in this separate apartment, provided no more power was required to operate it than if it had all been under the same roof, they had a right so to do. The instructions of the court to which exceptions are taken were in accordance with the views we have here expressed, and were therefore correct.

Nor were the defendants' rights affected by the refusal of the court to instruct the jury that the plaintiffs could not operate the factory more than a reasonable time, and that ten hours a day through the year is a reasonable time. The plaintiffs' rights are not thus circumscribed. It is expressly stated that the plaintiffs "have the first right to, and control of, all the water in said stream at the said dam and privilege at all times and seasons of the year for propelling their said factory and machinery for the factory building as before described." Having the right to the use of the water for the purposes of their factory at all times and seasons of the year, they had a right to run their factory as many hours a day as they considered proper. Their deed contains no limitation upon the number of hours out of the twenty-four each day in which they can run their factory. It is not for the court to restrict the time when the factory shall be operated when the parties have not seen fit to do so.

*Exceptions overruled.*

PETERS, C. J., DANFORTH, VIRGIN, LIBBEY and EMERY, JJ., concurred.