UNITED STATES of America, upon the relation and for the Use of the TENNESSEE VALLEY AUTHORITY, Plaintiff,

v.

Richard L. HUGHES, Defendant.

Civ. A. No. 2085.

United States District Court
E. D. Tennessee,
Northeastern Division.

Nov. 16, 1967.

**734**

Charles J. McCarthy, General Counsel, TVA, Knoxville, Tenn., for plaintiff.

Jack R. Musick, Street, Banks, Merryman & Musick, Elizabethton, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

This is an action by the relator Tennessee Valley Authority for a mandatory injunction to require the defendant to remove two house trailers from a flowage easement in the margin of Watauga Reservoir in Carter County, Tennessee. There is no genuine issue as to any material fact extant between the parties, and the relator TVA has moved for a summary judgment, Rule 56, Federal Rules of Civil Procedure.

■ Mr. Hughes' predecessors in title and the relator TVA entered into a contract in 1947 for the purchase by TVA of a flowage easement to the 1,980-foot elevation contour line on the shore of the lake. Therein, the relator was given the right to enter upon the land and remove, dispose of or demolish all buildings and fences below such elevation if Mr. Hughes' predecessors had not done so within six months after the date of the contract. This instrument was not recorded and was not brought to the attention of the defendant Mr. Hughes until this lawsuit was instituted. Thus, its provisions neither bind nor obligate him. Parker v. Meredith (1900), Tenn.Chan. App., 59 S.W. 167, 170 [3]; Tennessee Public Service Co. v. Price, C.A.Tenn. (1932), 16 Tenn.App. 58, 61 [2], 65 S.W.2d 879.

Soon afterward these predecessors granted the relator TVA permanent easement rights in and over the Hughes land, including

" * * * (a) The right to permanently overflow, flood, and/or cover said * * * land with the flood, slack, or backwater created by the erection and operation of the Watauga Dam across the Watauga River; (b) The right to enter upon said land, from time to time, and clear, destroy, or dispose of any timber or other natural growth and any obstructions, accumulations, trash, filth, or any other thing which would in any way interfere with navigation or flood control, or tend to render inaccessible, unsafe, or insanitary either the reservoir created by said dam or the margin thereof; together with the right to prevent the draining or dumping into said reservoir of any refuse, sewage, or other material which might tend to pollute the same; (c) The right to enter upon said land and do such drainage and other work as in the discretion of the [relator], may be necessary to carry out an adequate program of malaria control, including the maintenance of necessary patrols and application of larvicides; (d) The right to enter upon said land and excavate, erect structures, and do such other work as is desirable in connection with the needs of navigation."

The grant specifically bound Mr. Hughes' predecessors in title as well as such predecessors' assigns, but also included the following agreement: " * * * Nothing in this instrument shall in any wise be construed as depriving the Grantors of the right to remain in possession of * * * " the land over which the easement was granted. The land at issue was subsequently sold to the defendant Mr. Hughes, subject, *inter alia*, to the relator's recorded easement rights aforesaid. Thus, the relator TVA is the owner of the dominant estate in the easement, and the defendant Mr. Hughes is the owner of the servient estate therein.

■ The rights of the relator TVA in the land of Mr. Hughes are measured and defined by the purpose and character of the easement, which is not a conveyance of the fee in said land, but only of the rights and privileges granted by said flowage easement. TVA cannot materially increase the burden of the servient estate or impose thereon a new and additional burden. TVA has all the rights incident or necessary to the proper enjoyment of the easement, but noth-

ing more. See 25 Am.Jur.(2d) 478 et seq., Enjoyment of Easement, §§ 72 et seq. Mr. Hughes has all the rights and benefits of ownership of the servient estate consistent with the easement, and the right to use the land remains in him, so far as such right does not conflict with the purpose and character of the easement. Ibid., § 89. Its use must be confined to the terms and purposes of the grant, but the owner of the dominant estate cannot increase the servitude imposed on the servient estate. Henry v. Tennessee Electric Power Company, C.A.Tenn. (1927), 5 Tenn.App. 205, 208. " * * * Nothing passes by implication as incident to the grant except what is reasonably necessary to its fair enjoyment. * * * " 19 C.J. Easements, § 219." Henry v. Tennessee Electric Power Company, supra, at p. 209.

■ " * * * A grant of water easements carries with them by implication, as secondary or subsidiary easements, everything that is beneficially necessary, or incident to the grant, whether mentioned or not, and of two constructions of such a grant, that will be selected which gives to such appurtenant privileges the more convenient and reasonable mode of enjoyment. * * * " 56 Am.Jur. 714, Waters, § 259. " * * * In construing a grant of water privileges, the intention of the parties must be sought from the language of the instrument, taking into consideration the situation of their business, the subject matter to which the grant relates, and the object to be attained. Carleton Mills Co. v. Silver, 82 Me. 215, 19 A. 154, 8 L.R.A. 446." 56 Am.Jur. 714, fn. 5. The respective rights of the relator TVA and Mr. Hughes " * * * must be so used and exercised as not to unreasonably interfere with and obstruct each other. * * * " Miller v. State (1910), 124 Tenn. 293, 305, 137 S.W. 760, 762, 35 L.R.A.,N.S., 407. " * * * Reasonable use is the touch-

stone for determining the rights of the respective parties. * * * " Ibid., at 307, 137 S.W. at 763.

Watauga Dam and Reservoir is an integral part of the TVA system of multiple-purpose water control projects in the Tennessee valley area. The normal minimum ground elevation of the water is 1,815 feet,[1] and the spillway crest is 1,975 feet. The dam itself is designed for a maximum headwater elevation of 1,988 feet, but during extreme flood conditions, water will be stored in the reservoir only up to approximately the 1,980-foot level.

The defendant Mr. Hughes has set his two trailers together on concrete blocks, with their wheels removed, and has attached thereunto a wooden porch, at the average elevation of 1971.2 feet. The combined trailers are served by a metered electric power line, a water line, and a sewer line which is connected to a septic tank and sewage disposal system. For all intents and purposes, it is obvious that Mr. Hughes' combined trailers have lost their mobility and have become immobile structures on the easement. He has advised the relator that he intends to construct nine additional such units below the 1,980-foot elevation.

Officials of the relator TVA are fearful that under extreme flood conditions, these structures " * * * could * * * " break loose from their mounting and become floating menaces to boats operating on the reservoir and to the spillway of the dam, and that the electric service wires connected to them " * * * could also * * * " become dangerous to human life. If this conceivable potential matured into reality, it is immediately apparent that the trailers could become constituted " * * * obstructions * * * or * * * thing(s) which would * * * interfere with navigation or flood control, or tend to render * * * unsafe * * * either the reservoir * * * or the margin thereof * * *." This would directly

---

1. At normal pond-level of the lake, there is no flowage of water from the reservoir of Watauga Lake over any part of the Hughes' land embraced within this easement.

interfere with the relator TVA's secondary or subsidiary easements granted by implication in the formal and recorded grant. Cf. 56 Am.Jur. 714, supra; Brown v. Alabama Power Co. (1963), 275 Ala. 467, 471 [5], 156 So.2d 153, 157.

However, the language of the easement grant suggests that it was not the intention of the parties to inhibit the use of all structures within the flowage easement, because the relator TVA was granted therein the " * * * right to * * * erect structures * * * " upon the flowage easement. The navigational and flood-control duties of the relator TVA, the subject matter to which the grant of this easement related, and the objects sought to be obtained thereby, indicate logically that no TVA structure will be erected on the easement which might break loose and become a floating menace to boats on the reservoir or threaten to clog or damage the spillway at the dam.

It appears to the Court, therefore, that the parties should be able to agree upon a method of anchoring the trailers in such manner that their breaking loose would become as remote a possibility as is the possibility that the pool level of the reservoir will need to be raised to its maximum, and that a "fail-safe" type of device could be installed to assure that electrical current would not be transmitted into the water should such eventuality occur. In that manner, it appears to the Court, a due and reasonable enjoyment of the easement by the relator TVA and of the servient estate by the defendant Mr. Hughes can be fairly achieved.

■ " * * * Though the rights of the easement owner are paramount, to the extent of the easement, to those of the landowner, the rights of the easement owner and of the landowner are not absolute, irrelative, and uncontrolled, but are so limited, each by the other, that there may be a due and reasonable enjoyment of both the easement and the servient estate. * * * " 25 Am. Jur. (2d) 478, supra, § 72. " * * * Public policy demands that these inter-

ests by reconciled, so that both can be enjoyed and neither be unnecessarily or unreasonably obstructed or destroyed * * * ." Miller v. State, supra, 124 Tenn. at 306, 137 S.W. at 763.

■ This Court is disposed to overrule the relator's motion for a summary judgment and deny its application for an injunction, provided the defendant proposes satisfactory methods of (a) anchoring his trailers in such manner that the possibility of their breaking loose from their mountings under extreme conditions of flooding, when the level of the pool behind Watauga Dam may be raised to its maximum of approximately the level of 1,980 feet, will be rendered remote, and (b) installing and maintaining a "fail-safe" type of device on each trailer which can reasonably be expected to assure that electrical current from power lines thereto will not be transmitted into the water in such eventuality. Thus conditioned, as above, the relator's motion for a summary judgment, argued September 7, 1967, hereby is overruled, and its application for an injunction hereby is

Denied.