**UNITED STATES of America upon the relation and For the Use of the TENNESSEE VALLEY AUTHORITY, Plaintiff-Appellant,**

v.

**Richard L. HUGHES, Defendant-Appellee.**

**No. 18733.**

United States Court of Appeals
Sixth Circuit.

April 9, 1969.

Thomas A. Pedersen, Tennessee Valley Authority, Knoxville, Tenn., Robert H. Marquis, General Counsel, Tennessee Valley Authority, Knoxville, Tenn., on brief for appellant.

Lewis Merryman, Elizabethton, Tenn., Street, Banks & Merryman, Elizabethton, Tenn., of counsel for appellee.

Before PHILLIPS, PECK and COMBS, Circuit Judges.

COMBS, Circuit Judge.

The Tennessee Valley Authority sought an injunction in district court to require the defendant, Richard L. Hughes, to remove two house trailers from within the area of TVA's flowage easement on the shore of Watauga Reservoir in Carter County, Tennessee. The district court denied the injunction subject to the conditions that Hughes would (a) anchor his trailers in such manner that the possibility of their breaking loose in flood-time would be remote, and (b) install and maintain a "fail-safe" electric device to assure that electrical current leading to the trailers would not be transmitted into the reservoir. D.C., 278 F.Supp. 733. TVA appeals.

The flowage easement in question was purchased by TVA in 1947 from Hughes' predecessor in title. The deed of easement was properly recorded and contains the following:

"[The easement is] designated for the following uses and purposes: (a) The right to permanently overflow, flood, and/or cover said * * * land with the flood, slack, or backwater created by the erection and operation of the Watauga Dam across the Watauga River; (b) The right to enter upon said land, from time to time, and clear, destroy, or dispose of any timber or other natural growth and any obstructions, accumulations, trash, filth, or any other thing which would in any way interfere with navigation or flood control, or tend to render inaccessible, unsafe, or insanitary either the reservoir created by said dam or the margin thereof; * * *; (c) The right to enter upon said land and do such drainage and other work as * * * may be necessary to carry out an adequate program of malaria control * * *; (d) The right to enter upon said land and excavate, erect structures, and do such other work as is desirable in connection with the needs of navigation.

&ast; &ast; &ast; &ast; &ast; &ast;

"Nothing contained in this instrument shall in any wise be construed as depriving the Grantors of the right to remain in possession of, and to remove improvements from the above described land in the manner and within the time limits specified in the contract of purchase and sale under the provisions of which this conveyance is made."

The unrecorded contract of sale referred to in the deed of easement provides in part:

"All buildings located * * * below the 1980 foot contour level and all fences located * * * below the 1960 foot contour level constitute hazards to navigation or menaces to human life and must be removed prior to December 1, 1948, * * *. If seller has not removed said buildings and fences prior to the dates specified, the Authority shall have the right to enter upon the land and remove, dispose of or demolish same."

TVA's flowage easement extends to an elevation of 1980 feet. The two trailers which Hughes has placed on the easement are at an average elevation of 1971.2 feet, and are connected by a wooden porch. The district court found that the "combined trailers have lost their mobility and have become immobile structures on the easement." The trailers are served by an electric power line, a water line, and a sewer disposal system. The district court further found that Hughes intends to construct nine additional units on the easement below the 1980 foot elevation. The storage waters in the reservoir have never reached the elevation at which the trailers are located.

The narrow question presented here is whether, under the terms of TVA's flowage easement, the owner of the fee can be enjoined from erecting house trailers within the easement area. We hold that he can be enjoined and that the judgment of the district court must be reversed.

We are of the opinion that the presence of these immobilized house trailers in the area of the flowage easement violates, in particular, the express provision of the easement which authorizes the destruction or removal of "any obstruction * * * or any other thing which would in any way interfere with navigation or flood control," and violates, in general, the overall intent and purpose of the easement. A basic purpose of flood control obviously is to harness rampaging flood waters in order to prevent the destruction of homes and injury to persons. This objective could hardly be accomplished if the area into which those flood waters are to be diverted has private dwellings constructed thereon. It is also apparent that such obstructions, if submerged in the reservoir waters, could be a latent danger to watercraft and therefore a potential interference with navigation.

■ Although the respective rights of the owners of the dominant and servient estates must be construed so as not to unreasonably interfere with each other, Miller v. State, 124 Tenn. 293, 137 S.W. 760, 35 L.R.A.,N.S., 407 (1910), the owner of the dominant easement has all the rights incident or necessary to proper enjoyment of the easement. 25 Am.Jur.2d Easements & Licenses §§ 72–75. The use of the servient estate must be consistent with that of the dominant estate. Brown v. Alabama Power Co., 275 Ala. 467, 156 So.2d 157 (1963).

It is no excuse to say that this particular obstruction is minor in nature. If Hughes can continue to maintain this obstruction, there is no reason why others similarly situated cannot do likewise; the ultimate effect being a limitation on the usefulness of the easement.

■ We place no great significance on the fact that TVA had the right to enter upon the land and erect structures. This was an express grant to be exercised in accord with the needs of navigation. To say that this evidences an intent that the landowner would be permitted to erect structures incompatible with the needs of navigation is an untenable position.

Hughes was clearly on notice of the contents of the recorded deed between his predecessor and TVA. That deed specifically referred to the removal of improvements from the land in the manner and within the time limits specified in the contract of sale. Hughes argues that there is no specific prohibition against the erection of other structures, only the requirement that structures existing at the date of the deed be removed. Obviously, the provision requiring removal of existing structures by necessary implication prohibits the erection later of identical or similar structures.

Reversed and remanded for proceedings consistent with this opinion.

PECK, Circuit Judge (dissenting).

I regret that I cannot join in the conclusions of my brethren. While I have no quarrel with the arguments of the majority opinion for taking judicial notice of what is best for navigation, I suggest that the TVA should not make it necessary for the courts to present those arguments. Neither the courts nor the TVA should be required to enter the lists and do battle as to the interpretation to be placed on the unclear language of the easement. The TVA waxes eloquent in now urging what is in the best interest of the public, but obviously had it had such best public interest at heart initially, both the argument and this law suit would have been obviated. It is clear that the TVA could have purchased the fee for the same amount of public money which it chose to expend for a flowage easement and a law suit. I would deny such a party the extraordinary relief of injunction.