UNITED STATES of America, Plaintiff,

v.

FORESOME ENTERTAINMENT CO., Defendant.

No. 1:01–CV–0006.

United States District Court, N.D. Ohio, Eastern Division.

Feb. 27, 2002.

Steven J. Paffilas, Cleveland, OH, for Plaintiff.

J. Michael Murray, Jeremy A. Rosenbaum, Berkman, Gordon, Murray & De-Van, Cleveland, OH, for Defendant.

### MEMORANDUM & ORDER

O'MALLEY, District Judge.

Plaintiff, the United States of America, seeks summary judgment in this action against Defendant, Foresome Entertainment Company (Foresome). Specifically, the United States asks that this Court enter judgment as a matter of law ordering Foresome to remove several structures and obstructions from property over which the United States owns flowage easement

rights, and enjoining future construction which is inconsistent with the terms of that easement. For the reasons stated, the motion for summary judgment (Docket No. 16) is GRANTED. Foresome is hereby ORDERED to remove, within 90 days of the date of this order, the following structures/obstructions from its land: Structure # 153–building used by driving range; Structure # 155–building used by bar/striptease parlor; Structure # 225–business sign; Structure/Obstruction # 231–unauthorized fill material.

## I. BACKGROUND

### A. *The Easement.*

The land at issue is in Richland County, Ohio, near the Charles Mill Dam. The Charles Mill Dam is part of a system of dams designed to control floods in the Muskingum Watershed Conservancy District. The dam protects downstream communities from floods to which they would otherwise be vulnerable; it can hold flood waters up to 1020 feet above sea level (the "spillway elevation"). As the dam nears capacity, the water that is prevented from flowing downstream is diverted to nearby low-lying tracts of undeveloped land behind the dam. By diverting flood waters to undeveloped land, the dam system helps minimize the risk to lives and to property resulting from floods.

This system makes sense, of course, only so long as those low-lying tracts of undeveloped land remain, in fact, undeveloped. For this reason, the United States, through condemnation proceedings, acquired not only the right to flood these tracts ("flowage easement rights") but also the right to prohibit or restrict the placement of structures that, in its view, would interfere with its flood control program.

On May 31, 1945, such flowage easement rights were secured over the tracts of land at issue here. These tracts, undeveloped at the time, became subject to the following easement, as recorded in the deed:

IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED that there be vested in the United States as to [the lands at issue] the perpetual right and easement to flood that certain affected area as may be necessary by means of the erection, operation and maintenance of the Charles Mill Dam and Reservoir, as provided in the Official Plan of the Muskingum Watershed Conservancy District, with spillway at elevation 1020 feet above mean sea level, together with the right of entry thereon and the right to remove therefrom the timber and natural growth and any other obstructions, growth, accumulations, brush, trash, filth and any other things which in any [sic] interfere, or may interfere, with the operations and maintenance of the Charles Mill Dam and Reservoir; also including the perpetual right and easement to flood as aforesaid all the right, title, and interest of the owners of the tracts of land hereinafter described ... **together with the right to require the removal of all existing buildings, if any, located upon said tracts of land, used for dwelling purposes and having a first-floor elevation five (5) feet or more below said spillway elevation; and of all existing buildings, if any, located upon said tracts used for other than dwelling purposes and having a first-floor elevation ten (10) feet or more below said spillway elevation; and the right to prohibit or restrict the placing or construction of improvements, structures, or obstructions of any kind upon said tracts of land;** ... and that the right to just compensation for the same is vested in the persons entitled thereto when said compensation shall be ascertained and awarded in this proceeding, and estab-

lished by judgment thereunder according to law . . . .

(Emphasis added). The easement grants to the United States the right to prohibit or restrict the placing or construction of improvements, structures, or obstructions of any kind upon the land below 1020 feet above mean sea level (msl), the spillway elevation. But its right to remove buildings that predate the easement is limited: If a building existed at the time of the easement, was used for nondwelling purposes (the only type of buildings at issue here), and had a first-floor elevation less than ten feet below the spillway elevation—or, stated differently, if a pre-existing building's first floor elevation was higher than 1010 msl—the United States had no right to remove it.

### B. *The Structures at Issue.*

Foresome owns two separate parcels of real property covered by the deed and encumbered by the easement. The United States alleges that three structures and one "structure/obstruction" on these tracts are below 1020 msl and were not existing at the time the easement was taken. The United States identifies each structure and each structure's alleged elevation as follows:

Structure # 153—Building used by driving range. First floor elevation 1013.28 msl.

Structure # 155—Building used by bar/striptease parlor. First floor elevation 1014.35 msl. Low ground elevation 1015.21 msl.

Structure # 225—Business sign. Low ground elevation 1015.00 msl.

Structure/Obstruction # 231—Unauthorized fill material. Low ground elevation 1013.49 msl.

(Mot. Summ. J. at 6.)

Foresome purchased the two tracts of land in the late 1990s, long after the easement had been granted. Foresome concedes, moreover, that it purchased the property with full knowledge that the United States possessed an easement encumbering the tracts. (Indeed, notice was given not only through the recorded language in the deed itself but also through numerous letters from the U.S. Army Corps of Engineers discussed *infra.*) After purchasing the land, Foresome nevertheless spent $4,423.68 to remodel and expand one of the structures and open the bar/striptease parlor.

 The United States alleges that, because the elevation of each structure or obstruction is below the spillway elevation of 1020 msl, and because the structures did not exist at the time of the taking, it has the right to require their removal pursuant to the easement.[1]

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

---

1. The parties note that on August 20, 1986, the Secretary of the Army authorized structures with first floor elevations at or above 1016.5 msl to remain if they were in place on or before August 21, 1986. The only calculated elevations that are before the Court on this motion, however, are between 1013 and 1015 msl. Thus, the Secretary's 1986 authorization has no effect on this motion.

■ Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Deter-

mination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. 2505.

■ Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C.Cir.1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F.Supp. 1, 4 (S.D.Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

## III. ANALYSIS

### A. *The Parties' Contentions.*

Having submitted the deed itself, as well as affidavits of surveyors and of a division chief of the U.S. Corps of Engineers, the United States alleges that the following facts are proven: (1) that, by Declaration of Taking on May 31, 1945, the United States acquired a perpetual flowage easement over the property Foresome now owns for the express public purpose of

protecting communities downstream from the Charles Mill Dam from potential flood damage; (2) that the easement grants the United States, among other things, the right to prohibit or restrict the placement of any structure or obstruction below the spillway elevation; (3) that the structures and obstructions on Foresome's land are below that level; (4) that the structures did not predate the easement; and (5) that Foresome obtained the property with knowledge of the easement. After noting that, under Ohio law, the holder of an easement has authority to remove unlawful obstructions, *see Rueckel v. Texas Eastern Transmission Corp.*, 3 Ohio App.3d 153, 444 N.E.2d 77 (1981), the United States moves for summary judgment seeking an order requiring removal of the structures at issue here.

Interestingly, Foresome admits most of what the United States asserts. Specifically, Foresome admits the existence and original date of the easement, it admits that the easement grants the United States the right to prohibit the building of structures within the spillway, it admits that the structures at issue do not predate May 31, 1945, and it admits that it purchased the land on which the structures sit, and added yet additional structures,

with full knowledge of the easement. While it questions the admissibility of certain of the government's proof on the issue, moreover, Foresome also does not deny that the structures on its land are situated below the spillway.

■■ Despite these admissions, Foresome resists entry of summary judgment in the government's favor. Foresome first makes several weak and largely irrelevant attacks on the adequacy of the government's evidentiary submissions, which the Court addresses only briefly below. Foresome then asserts three substantive challenges to the United States' motion: (1) that certain of its structures should be "grandfathered" under the easement because, though not predating the easement, portions of those structures predate final judgment on the takings action prompted by the easement; (2) that the easement contemplates the right to *prohibit* construction, but not to *remove* resulting structures once construction has occurred unabated; and (3) that the United States has failed to prove that Foresome's structures "unreasonably interfere" with the purposes for which the easement was obtained.[2] Finally, Foresome asks this Court to use its equitable powers to allow

---

**2.** In addition to these three substantive challenges made by Foresome, it also briefly mentions a "Fifth Amendment takings" argument in opposition to the government's motion. It asserts that, if the government takes (or is given) broader rights than were originally granted under the easement, a compensable taking has occurred. Although this may be true, the argument is neither substantively relevant nor procedurally appropriate here. For one thing, Foresome's takings argument does not speak to the question presented by this dispute: what, in fact, the easement grants as it relates to the structures at issue. *See United States v. Alameda Gateway, Ltd.*, 953 F.Supp. 1106, 1112–13 (N.D.Cal.1996) (noting irrelevance of defendant's takings argument in opposition to United States' motion for injunction to remove defendant's struc-

tures pursuant to Rivers and Harbors Act of 1899). Moreover, if Foresome somehow believes that a viable takings claim will arise from the forced removal of the structures here, such a claim can neither be made in this proceeding nor even be presented to this Court; it must, instead, be brought before the U.S. Court of Federal Claims. *See* 28 U.S.C. § 1491; *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 129 n. 6, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985) ("[I]f the Corps has indeed effectively taken respondent's property, respondent's proper course is not to resist the Corps' suit for enforcement ... but to initiate a suit for compensation in the Claims Court."); *Alameda Gateway*, 953 F.Supp. at 1112. Foresome's takings argument here is, thus, rejected.

Foresome's structures to remain in place whether or not the easement would otherwise authorize their removal. The Court addresses, and rejects, each of these contentions below.

### B. *Foresome's Evidentiary Challenges.*[3]

Foresome initially claims that the government's "factual presentation is insufficient to sustain its burden under Rule 56." (Def's Opp'n Mot. at 11.) Under this broad rubric, it makes three sub-arguments: First, that the government's contention that the Charles Mill Dam might someday overflow and cause flood damage is "pure supposition"; second, that the affidavit of William G. Graham is defective; and third, that the affidavit of William H. Long is inadmissible.

### 1. *Flood Control Concerns.*

Foresome contends that the government "has provided no evidence . . . upon which to conclude that [the right to flood the easement area] might someday be exercised or, if the right were exercised, that any flow of water, a torrent or even a trickle, might someday reach Foresome's property." (*Id.* at 12.) Foresome also takes issue with the government's reliance on "unsworn references to and purported summaries of" the Charles Mill Dam Project at issue as well as the government's "attempts to establish a threat of submersion." (*Id.* at 12–13.) While Foresome does not deny that the easement was obtained for the purpose of guarding against the threat of overflow from the Charles Mill Dam, it argues that there is no proof that such a threat actually exists. Foresome contends that, in the absence of proof on every point asserted, the govern-

ment's motion is not "well-supported" within the meaning of Rule 56 and, thus, must be denied. To be well-supported, however, a motion under Rule 56 need only contain evidentiary support for issues that are both contested *and material.* Because, as will be discussed below, the Court may not and will not revisit the wisdom or need for the easement in determining whether it should be enforced, the question of whether the dam will actually overflow, or is even likely to, is irrelevant. Any inadequacy of proof on that point is, accordingly, also irrelevant.

### 2. *The Graham Affidavit.*

Foresome asserts that the affidavit of William G. Graham may not be relied upon in support of the government's motion because it cites to documents Foresome contends are unauthenticated and constitute hearsay, and because Graham does not expressly state that his affidavit relies on personal knowledge. The attacks on the Graham affidavit are unpersuasive. Graham is the Chief of the Real Estate Division for the Huntington District of the Corps of Engineers. He asserts in his affidavit that he has undertaken a review of all records of the District Office and has reviewed survey data commissioned by and provided to him in his capacity as Chief from a professional surveying firm. He then describes the conclusions reached from those reviews and asserts that they are "true and correct." Finally, to the extent Mr. Graham refers to documents, they are either letters to which he was a signator and which were kept in his control or which would clearly constitute either public records or business records

---

**3.** Foresome also filed a Motion to Strike Affidavits Submitted by Government in Support of its Motion for Summary Judgment (Docket No. 22). This Motion relies entirely on the arguments made in its opposition to the gov-

ernment's summary judgment motion—arguments that are addressed, and rejected, here. Thus, the motion to strike is DENIED for the same reasons.

under the hearsay rules. There is simply no meaningful deficiency in his affidavit.

The Court notes, moreover, that it is *undisputed* that Defendant's buildings fall below the spillway elevation, it is *undisputed* that the structures were built after 1945, and it is *undisputed* that the Corps of Engineers communicated with Foresome regarding removal of the structures in the manner and on the dates reflected in the District Office records. Since these undisputed points are essentially the only ones made in Mr. Graham's affidavit, Defendant's attack on that affidavit appears to be a meaningless exercise.

### 3. The Long Affidavit.

 Foresome also attacks the affidavit of William H. Long, a professional surveyor acknowledged by both parties to be the government's expert. In his affidavit, Long asserts that his employer, Engineering Associates, Inc., was contracted to determine elevations of the four structures or obstructions at issue. Long asserts that he examined the field notes, survey data, and computations, and found that the computed elevations-all below 1020 msl-were accurate to the best of his knowledge and belief. Foresome argues that his affidavit is deficient because Long himself did not personally conduct any test and relies on hearsay. As the government points out, however, Long is providing expert testimony, and thus the "personal knowledge" requirement "hinges on whether the expert personally analyzed the data that was made known to him and formed an expert opinion based on his own assessment of the data within his area of expertise." *NAACP-Montgomery Metro Branch v. City of Montgomery*, 188 F.R.D. 408, 413 (M.D.Ala.1999); *see also Monks v. General*

*Electric Co.*, 919 F.2d 1189 (6th Cir.1990). An expert is permitted by Rule to rely on inadmissible evidence, moreover. *See Monks*, 919 F.2d at 1192 (applying Fed. R.Evid. 703 to expert affidavits on summary judgment). Long's affidavit is not deficient.[4]

In addition, because the elevations of the structures are not in dispute, the Court fails to see the relevance of the evidentiary analysis the Defendant asks the Court to undertake on this issue.

### C. Foresome's Other Legal Challenges.

#### 1. Whether the Structures Were Grandfathered Under the Easement.

 Foresome next argues that the government has no right to remove at least some of its structures because there is a genuine issue as to whether a portion of the bar/striptease parlor and the sign designating its existence were in place at the time the easement was "perfected," as Foresome defines that term. Foresome rightly notes that existing nondwelling structures with base levels higher than 1010 msl were "grandfathered" by the easement; that is, that type of structure could remain on the land *despite* being below the 1020 msl spillway. Thus, if the bar/striptease parlor and accompanying business sign existed at the time of the easement, the government could not demand their removal.

According to Foresome, "the record establishes that the sign and a portion of the very building used for the [bar/striptease parlor] were built in 1947, 2 to 4 months before the government's easement was perfected." (Def's Opp'n Mot. at 8.) Foresome asserts that the easement was not

---

4. In order to buttress its evidence as to the structures' elevations, the United States attached to its reply brief a supplemental affidavit in which Long describes the bases for his opinion in more detail, as well as an affidavit by Harley A.Shaw, the engineer who personally conducted the field survey upon which Long relied in arriving at his expert opinion.

"perfected" until final judgment was reached regarding the compensation due to the landowner on June 4, 1947. Thus, it concludes, the building, and its accompanying sign, were "grandfathered" under the easement.

In support of its argument, Foresome borrows a phrase from *Catlin v. United States*, 324 U.S. 229, 241, 65 S.Ct. 631, 89 L.Ed. 911 (1945), indicating that the government's title is "defeasible" and subject to challenge by a fee owner until final judgment-when the exact compensation due a landowner is determined. Foresome then assumes that, while title is defeasible, the taking has not been "perfected." Foresome further assumes that the phrase "existing" in the easement must mean "existing at the time of final judgment," rather than "existing at the time the taking was declared."

This argument is not a viable one. When the United States condemns property, that property is deemed taken "upon filing [of] said declaration of taking and [upon] deposit in the court ... of the amount of the estimated compensation stated in said declaration." 40 U.S.C. § 258a; *see United States v. Herring*, 750 F.2d 669, 671 (8th Cir.1984) ("[U]pon filing the declaration of taking and making the deposit of the estimated compensation ... title vested immediately in the government."). Here, the declaration was filed and the deposit made in 1945, thus vesting title in the United States at that time. The title was "defeasible" until final judgment *only* to the extent that it was subject to challenge by the then existing landowner as a wrongful taking. *Herring*, 750 F.2d at 671. No such challenge was made here. Because the taking occurred in 1945

and Defendant concedes that the sign and bar/striptease parlor were built, at the earliest, in 1947, there is no genuine issue as to whether they are "grandfathered."

Not only is Foresome's suggested interpretation of the easement unsupported by the statute or case law, it is also somewhat illogical. Under Foresome's theory, a landowner could build any number of structures-indeed, an entire residential neighborhood-after the easement is taken, and have those structures "grandfathered" so long as the compensation question remains unresolved, even if it were the landowner himself who delayed those judicial proceedings. This interpretation could entirely defeat the purpose of the easement, which is to keep the land undeveloped, minimizing the risk that floods in the area will endanger lives.[5]

## 2. *Foresome's Reading of the Easement.*

■ Foresome next makes what it refers to as a "plain meaning" argument: Noting that the government has a right to "prohibit or restrict the placing or construction of improvements, structures, or obstructions of any kind upon said tracts of land," Foresome argues that this right does not encompass a right to *remove* Foresome's structures. Foresome notes that the easement could have provided for such removal rights, or could have precluded development of land without the government's permission (as it has in easements on other land), but it did not. Relatedly, Foresome points out, the easement language is permissive-it does not obligate the government to exercise its right to prohibit or restrict future development,

---

**5.** Foresome also argues here that, even if its structures are not "grandfathered," the government still fails to "establish" that the structures' base levels fall below allowable levels. This argument, however, merely repeats the attacks on Long's affidavit, discussed and resolved above, and ignores Foresome's own concession in response to Requests for Admission that the structures *do* fall below the spillway level.

nor does it expressly obligate the fee holder to refrain from improving the land. Thus, Foresome concludes, the erection of structures was not an express violation of the easement; and, because the United States did nothing to prevent the building of these particular structures (presumably by resort to a Court Order at that time), the United States cannot after-the-fact seek their removal.

Although Foresome argues that the easement's right to "prohibit or restrict" placement or construction of buildings or other structures does not include a right to remove those structures when the landowner insists on constructing them, this District has previously ruled otherwise. In *United States v. Boyd*, no. C77–7A, slip. op. (N.D.Ohio November 22, 1977), the Court found that the right to prohibit or restrict the placement of structures within the flowage easement-language identical to that used here-did, in fact, include a right to require removal of subsequently placed structures. *See id.* (finding that the placement of mobile homes "violates the express terms" of the easement that grants the government the right to "restrict or prohibit" such placement, and requiring their removal). Although Foresome asserts that the *Boyd* Court was "wrong," the Court is not persuaded to discard's *Boyd's* holding in favor of Foresome's unsupported interpretation.

This is especially true because Foresome's interpretation is substantially inconsistent with the purpose of the easement. *See Crane Hollow, Inc. v. Marathon Ashland Pipe Line*, 138 Ohio App.3d 57, 740 N.E.2d 328, 334 (2000) (noting that an easement must be construed "in a manner that permits the dominant estate to carry out its purpose"). The undisputed purpose of this easement is to allow the government to flood the land in accordance with its flood control program and to keep the land largely undeveloped, minimizing risks to life and property. Foresome's narrow interpretation of the easement would eviscerate the benefit to the government by allowing structures of any number or description to be placed on the land to which flood waters are diverted, so long as the structures are "placed" or "constructed" before the government notices or objects. Once placement or construction of the structures is completed, under Foresome's interpretation, the government could not require the resulting structures or buildings to be removed. This strained interpretation would sap the easement of any value to the government's flood control program. *See id.* (noting that "[t]he grant of an easement includes the grant of all things necessary for the dominant estate to use and enjoy the easement"). Despite Foresome's arguments to the contrary, the government's right ˉ to prohibit or restrict placement or construction of new buildings or structures must also include the right to remove those buildings or structures when the landowner insists on building them.

Indeed, the Sixth Circuit previously rejected an attempt—similar to Foresome's—to construe the language of a flowage easement so narrowly as to undermine its effect. In *United States v. Hughes*, 408 F.2d 619 (6th Cir.1969), a landowner argued that the government's flowage easement explicitly required only removal of structures that existed at the time of the easement was taken, but did not specifically prohibit the placement of new buildings; thus, the government could not require removal of trailers placed on the land after the taking occurred. The Court held that, in view of the easement's purpose, "the provision requiring removal of existing structures by necessary implication prohibits the erection later of identical or similar structures." *Id.* at 621.

Like the Court in *Hughes,* this Court will not so tightly constrain the language of the easement so as to defeat its purpose.[6]

■ Presented, apparently, as an alternative "plain meaning" argument, Foresome next asserts that, even if the easement grants the right to require removal of structures placed below the spillway elevation, the easement language should be read to limit that right to particular circumstances. These circumstances, according to Foresome, include situations where the structures were "built without the government's knowledge or even quickly built before the government could have reasonably exercised its right to restrict or prohibit the new construction." (Def. Opp. Mot. at 22.) Asserting that these circumstances do not exist here, Foresome concludes that the injunction should not issue.

■ Although Foresome does not identify any support for its argument—and the Court has found none—it appears that, in crafting its particular interpretation, Foresome has borrowed principles from common law defenses such as laches and estoppel. While these defenses may be applicable in many civil cases, they are not effective in opposition to the government. *See Utah Power & Light Co. v. United States,* 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791 (1917) (noting that nonobjection or implied acquiescence of government officials not effective defenses when government enforcing public right or in-

terest); *United States v. Bagwell,* 698 F.Supp. 135, 137 (M.D.Tenn.1988) (noting that laches, estoppel, and waiver defenses inapplicable in government suit for removal of structures interfering with easement).[7]

Perhaps in light of their clear inapplicability here, Foresome has, it appears, claimed neither laches nor estoppel as an explicit defense. Instead, Foresome would apparently have the Court apply these defenses against the government by, essentially, reading them into the language of the easement. Having been presented with no reasons to do so, nor finding any connection between Foresome's interpretation and the text of the easement, the Court declines.

In short, Foresome's "plain meaning" arguments have support neither in the text of the easement nor in the case law; moreover, each would substantially undermine the easement's flood control purpose. These arguments, accordingly, must fail. Under the Court's own "plain meaning" analysis, the easement grants precisely what the government asks for—the right to require removal of the structures at issue.

### 3. *The Issue of Unreasonable Interference with the Easement Rights.*

■ Foresome next argues that its structures do not "unreasonably interfere" with the government's flowage easement rights. It argues that Foresome's proper-

---

6. The Court notes that even if the government could not require Foresome to remove the structures at issue, it appears it may be entitled to remove them itself. In an earlier provision—one not specifically identified by the parties—the easement grants to the government "the right to remove ... timber and natural growth and any other obstructions, growth, accumulations, brush, trash, filth and any other things which in any [way] interfere, or may interfere," with the flood control program. *See Hughes,* 408 F.2d at 621 (relying

in part on nearly identical easement clause in granting government's injunction to remove defendant's trailers from land subject to government's flowage easement).

7. Although the Sixth Circuit has suggested that an estoppel claim may be actionable when "affirmative misconduct" by government officials is alleged, *Rogers v. TVA,* 692 F.2d 35, 38 (6th Cir.1982), no such allegation is made by Foresome here.

ty is "10–12 miles away from the spillway gates and there is no proof that even a drop of spillway overflow will ever wet the feet of the dancers at the nite-club, let alone proof that a torrent will flood the premises, let alone proof that the land will be permanently submerged." (Def's Opp'n Mot. at 26.)

Foresome's repeated assertions that the land has never flooded and is far from the dam itself carry little weight. In effect, Foresome's argument invites the Court to review the government's policy decision to acquire the easement in the first instance, or to second-guess whether the government took enough, not enough, or too much, in light of the flood control program at issue. This the Court will not do. *See Berman v. Parker*, 348 U.S. 26, 35–36, 75 S.Ct. 98, 99 L.Ed. 27 (1954); *United States v. Gettysburg Electric Ry. Co.*, 160 U.S. 668, 685, 16 S.Ct. 427, 40 L.Ed. 576 (1896) ("The use for which the land is to be taken having been determined to be a public use, the quantity which should be taken is a legislative and not a judicial question.") *quoted in United States v. Mischke*, 285 F.2d 628, 632 (8th Cir.1961).

Foresome's argument is particularly unpersuasive in light of the Sixth Circuit's rejection of a similar claim in *Hughes*. In that case, the government purchased a flowage easement in 1947 from an Ohio landowner who granted to the government, among other things, the right to flood the property, to remove obstructions, and to require the removal of certain buildings. *Hughes*, 408 F.2d at 620. After the easement was taken, the landowners placed two trailers on the land under the spillway elevation. Since the reservoir waters "ha[d] never reached the elevation at which the trailers are located," *id.*, and since the trailers were relatively small, the *Hughes* landowners, like Foresome here, apparently asserted that the trailers would have little effect on the flood control pro-

gram and would, thus, not "unreasonably interfere" with the easement's purpose. But the Sixth Circuit disposed of this notion in short order:

> It is no excuse to say that this particular obstruction is minor in nature. If [the landowner] can continue to maintain this obstruction, there is no reason why others similarly situated cannot do likewise; the ultimate effect being a limitation on the usefulness of the easement.

*Id.* at 621.

Foresome's efforts to distinguish *Hughes* by limiting its holding to "navigation rights" rather than "flood control" are unpersuasive. Although *Hughes* noted that the trailers placed on the land there may interfere with navigational safety if the land were ever flooded, it also explicitly held that the trailers would interfere with the government's flood control program. *See id.* at 620 (noting that "[a] basic purpose of flood control obviously is to harness rampaging flood waters in order to prevent the destruction of homes and injury to persons" and "[t]his objective could hardly be accomplished if the area into which those flood waters are to be diverted has private dwellings constructed thereon").

Moreover, Foresome's reliance on *United States v. Sickafoose*, 869 F.2d 1494, 1989 WL 21701 (6th Cir.1989) is misplaced. In *Sickafoose*, the Sixth Circuit reversed the district court's grant of summary judgment for the United States in enforcement of flowage easement rights. But the decision hinged on construction of easement language (for example, whether farming was an "improvement" of land prohibited by the easement) that is not before the Court here. Moreover, the Court expressly refused to premise its decision on the landowner's claim, like that made here, that its structures did not "unreasonably interfere" with the flowage easement rights. *Id.*

■ Foresome next points out what it considers a fatal inconsistency in the government's position: it notes that the easement allows existing structures at the same elevations as the structures at issue here to remain. Having allowed these existing structures to remain, Foresome alleges, the government cannot demonstrate how Foresome's structures—even if not existing at the time—unreasonably interfere with the government's flowage rights.

Although there is little evidence before the Court as to why the government distinguished between existing structures and subsequently constructed structures in this easement, several obvious possibilities exist. For example, the government may have assessed that the structures already placed on the land below the spillway elevation were minimal and decided that the landowner's interest in those particular structures could be accommodated so long as no further development occurred. The Court does not find the government's distinction between existing structures and subsequently placed structures so inconsistent as to undermine its ability to enforce the terms of the easement. In any case, as stated above, the Court does not sit in judgment of the wisdom of the government's rational policy decision.

### D. Foresome's Equitable Argument.

■ Finally, Foresome argues that the Court should exercise it equity powers to allow Foresome's structures to remain. Here, Foresome repeats its contention that the flowage rights are not necessary, asserts again that the dam has never overflowed, and again argues that Foresome's structures would not impede flowage if its

land were flooded. It also notes that forcing it to remove its structures would result in the loss of its business and the loss of any economically beneficial use of Foresome's property.

■ Again, the Court is unpersuaded by Foresome's position. As the government correctly notes, "a court of equity abuses its discretion when it alters an established easement or requires a party to accept an altered easement in substitution of the original." Crane Hollow, 740 N.E.2d at 337. The easement at issue here is unambiguous. Even if the equities in this case favored Foresome, the Court could not and would not alter the easement's provisions for Foresome's benefit.[8]

The United States's motion for summary judgment (Docket No. 16) is hereby GRANTED. Foresome's Motion to Strike Affidavits Submitted by Government in Support of its Motion for Summary Judgment (Docket No. 22) is DENIED.

**IT IS SO ORDERED.**

---

8. While the Court does not resolve the issue, it notes that Foresome chose to purchase the property with full knowledge of the easement and without obtaining any assurance from the government that it would not enforce its rights under the easement. Under such circumstances, it is unlikely the Court would find that the equities favor Foresome's position in this matter. X